IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## MIDDLE DISTRICT—HARRISBURG 1862.

## Rice *versus* Shuman.

*Effect of Repudiation of Partnership Contract by Partner.*

Where one permits another to buy stock on their joint account in anticipation of forming a partnership, and immediately afterwards repudiates the agreement to become a partner, he is not entitled to any of the property bought, nor are his individual creditors.

ERROR to the Common Pleas of *Perry county.*

This was an issue under the Sheriff's Interpleader Act, in which Samuel Shuman was plaintiff and William Rice defendant, to try the right of property to one hundred and ninety-nine and a half sides of leather, which were taken in execution by the sheriff at the suit of Prichett, Baugh & Co., for the use of William Rice, as the property of Jacob Bixler and Joseph D. Simonton, late partners trading as Bixler & Simonton.

The facts of the case were these:—By articles of agreement dated 29th October 1859, and deed dated 25th April 1860, Samuel Shuman sold and conveyed to Jacob Bixler a tannery, for $2500; $1000 to be paid on 1st of April 1860, and $750 on the 1st days of April 1861 and 1862. Notes were given for these last two payments.

(37)

Bixler took possession of the property, and carried on the business of tanning in his own name up to about the 1st of February 1861, when he took in Isaac Long as a partner. On the 12th of February 1861 the firm of Bixler & Long bought one hundred Caraccas hides on six months' credit, amounting to $591.70, and a few days after, Long, by mutual consent, withdrew from the firm.

On the 20th of February 1861 an agreement of copartnership was entered into between Joseph D. Simonton and Jacob Bixler, by which it was agreed that Simonton should pay $1250 for one-half of the tannery, and pay the foreman, Michael Gaylor, $250 for one year's wages; each to bear half of the expenses, and receive half of the profits, arising from a partnership in the business of tanning leather, to be carried on in said tannery.

The agreement stipulated that the partnership had commenced on the 1st day of December 1860, but no time was fixed for the payment of the $1250, or for the conveyance of the title.

By consent of the partners this agreement was presented to Prichett, Baugh & Co., of Philadelphia, by Jacob Bixler, and on the 18th of March 1861 a purchase was made in the name and on the credit of said firm of Bixler & Simonton, of one hundred Caraccas hides, at six months' credit, for $505.

These hides were worked in the vats about the last of March or first of April 1861, the hides bought in the name of Bixler & Long having been worked in about a month previous.

At this stage of the proceedings, Simonton refused further compliance with the terms of the agreement; and, on the 17th of April 1861, published in a public newspaper, printed in the county, the following notice:—

"All persons are hereby notified not to trust, or give credit, or in any way deal with Jacob Bixler (son of Joseph Bixler, deceased), on the strength or belief that I am in partnership with him in the tanning or any other business, as I am not now, nor do I consider that I ever have been, a partner of his."

The stock in the yard remained in the possession of Bixler, Gaylor working, as he testified, for Bixler & Simonton, until the 19th day of July 1861, when Bixler sold all the leather and stock in the tannery to Samuel Shuman, in payment of his own debts.

Soon after this sale, Bixler and Shuman called on Gaylor, the foreman, and informed him of the sale to Shuman, and that he would have to make a bargain with Shuman. Gaylor then agreed with Shuman to tan out the stock under him, and continued on in the tannery, as the foreman of Shuman, and tanned out the hides bought in the name of Bixler & Long, and those bought in the name of Bixler & Simonton. At the time the sheriff made the levy (November 18th 1861), there were in the

[Rice v. Shuman.]

yard one hundred and ninety-nine and a half sides of the leather.

Subsequently, Shuman notified the sheriff that he claimed the leather under the sale from Bixler; the sheriff presented his petition to the court, and the issue was formed, as above stated.

On the trial the plaintiff requested the court to instruct the jury,—

1. If the jury believe that Simonton was induced to go into the articles of copartnership in evidence with Bixler, and into the purchase of the one hundred hides from Prichett & Baugh, by the false representations of Bixler, the publication of the notice cautioning persons not to trust or deal with Jacob Bixler as the partner of the said Joseph D. Simonton, and the refusal of said Simonton to do any further act in compliance with the articles of copartnership, worked but a dissolution of said partnership, and did not operate as a relinquishment of, or work a forfeiture of, Simonton's rights to have the hides so purchased applied to the payment of said firm debt, and have the residue, if any, divided between them.

2. That the defendant here is the partnership creditor of Bixler & Simonton, and has levied on leather that his assignor (Prichett & Baugh) sold to these partners. So far as the levy on the execution is on the hides bought of Prichett & Baugh, he (the execution-creditor) has a right to hold it, unless it was sold and delivered to some one else, bonâ fide, before that, in the ordinary course of partnership business, or in payment of partnership debts. If Mr. Bixler disposed of it to Mr. Shuman, in payment of his own private debt, the sale to Shuman was illegal and void so far as Prichett & Baugh (or their assignee William Rice) is concerned, although Mr. Simonton did publish the notice in the public newspaper given in evidence, and permitted the hides to remain in the possession of Bixler. Prichett & Baugh, and their assignee William Rice, are not affected by the negligence, mistake, or misconduct of either partner, so long as they can reach partnership property that has not been properly disposed of for partnership purposes, or in the usual course of partnership business. And further, that Shuman can claim no equity by reason of the published disavowal of the partnership by Simonton, inasmuch as he has not proved that he ever saw it before he purchased from Bixler.

3. That if Samuel Shuman or Bixler or Gaylor, or either of their agents, or any other person by the direction or sufferance of the said Shuman or Bixler, permitted or caused the leather or hides belonging to the firm of Bixler & Long, or of Bixler, to become mixed with those of Bixler & Simonton, in such a manner as to render it impossible to discriminate one from the other, then all the leather so mixed would belong to Bixler & Simonton,

and the sheriff's levy on the same, as Bixler & Simonton's property, was good.

4. That on the publication of the notice and the personal notice to Jacob Bixler, that said Simonton would no longer continue the business of tanning with him as a partner, it became the primary duty of Jacob Bixler, if he retained the possession of said hides, to apply them to the payment of said partnership debt, and if in violation of said duty he sold them to the plaintiff, Samuel Shuman, to pay, or in trust for the payment of, his own individual debts, such sale would be void by reason of its being a fraud on the rights of Simonton, and the purchaser would take no title to the hides or the leather, and that, although Samuel Shuman had no knowledge of the partnership, or of its debts, or of the leather or hides being partnership property.

The court below (GRAHAM, P. J.) answered these points as follows :—

" 1. The question is, was Simonton a partner of Bixler ? The notice referred to is evidence, with the other evidence in the case, relied upon by plaintiff, tending to prove that Simonton was not a partner, and repudiated the agreement as of no binding validity. If he was not Bixler's partner, then a sale of the stock in the tannery by Bixler to Shuman would vest the ownership in the purchaser, and creditors cannot claim an equity by reason of a partnership, if such partnership had no existence.

" 2. We answer this point in the affirmative, if there was a partnership between Bixler & Simonton in carrying on the business of tanning. If there was no partnership, but only an agreement of partnership, which was never carried into effect, then this point has no application to the facts of this case. The notice given by Simonton is evidence to show that he denied the partnership, and this whether the notice was read by Shuman or not, and this is the very purpose for which it is offered.

" 3. If under the evidence of Gaylor you should be of opinion that only one-half of one hundred and ninety-nine and a half sides levied on were made from the hides bought on the credit of Bixler & Simonton, then the levy might have been made on the one-half of the one hundred and ninety-nine and a half hides, and the plaintiff in this issue may be entitled to but one-half of the property levied, and you may so find, if you find that there was a partnership in carrying on the business between Bixler & Simonton. If there was no such partnership, then the defence fails, and you should find generally for the plaintiff.

" 4. If Bixler & Simonton were partners in the tanning business, then Bixler could not legally appropriate the partnership property to his own debts ; and in this aspect of the case Shuman would not acquire, by his purchase from Bixler, the title to partnership property purchased by him."

[Rice *v.* Shuman.]

And charged also as follows :—

["It does not appear from the evidence that Simonton ever did any act in pursuance of the agreement of partnership after it was signed by him, except that it was taken to Philadelphia, with his consent, and one hundred hides purchased by Bixler on the credit of Bixler & Simonton. These hides went into the hands of Bixler at the tannery, who continued in the exclusive possession, management, and control of the tannery, and conducting the business without any interference on the part of Simonton, or attempt to carry out the agreement of partnership. On the contrary, he repudiated the agreement], alleged, as we infer from the evidence, that he was induced to enter into the agreement by the false representations of Mr. Bixler as to the profits of the business, and refused to take a deed from Bixler for one-half of the real estate in pursuance of the agreement of partnership, and on the 17th of April published the notice in a newspaper of this county, which was given in evidence.

"In this notice you will observe Mr. Simonton states that he was not then, or considered that he ever had been, a partner of Bixler in the tanning business.

"The hides were obtained, as we have stated, and these hides were worked in by Bixler, who continued to conduct the tannery to the 19th of July 1861, when he sold out his entire stock of hides and bark to Samuel Shuman, the plaintiff, in payment of a debt to Mr. Shuman, which he owed him, for the purchase of the tannery and stock bought from Shuman of about $1800, and a liability of Shuman as bail of Bixler to Kirkpatrick & Son for over $1500.

"In pursuance of this purchase, Shuman took possession, had the stock tanned out, and, when at the tannery ready for market, the sheriff levied on one hundred and ninety-nine and a half sides sole leather, on a *fi. fa.* issued on a judgment obtained against Bixler & Simonton by Prichett & Baugh, and assigned to William Rice. This judgment was obtained by Prichett & Baugh for the one hundred hides purchased on the credit of Bixler & Simonton, as before stated.

"The levy was made on the 18th of November 1861, and the evidence of Michael Gaylor, who worked out the stock for Shuman, is, that one-half of the leather levied by the sheriff was tanned from the hides purchased on the credit of Bixler & Simonton.

"The position of the defendant is, that the hides purchased on the credit of Bixler & Simonton as partners must be first applied to the payment of debt contracted by the purchase, and that Bixler could not apply it to the payment of his individual debt. [On the contrary, plaintiff contends that the equity of partnership creditors must be worked out through the equity of the

partners; that if Simonton denied and repudiated and disavowed the partnership, he cannot claim the equity of a partner, and the creditor's equity falls with that of the partner—that he cannot blow hot and cold, allege the agreement is of no validity and refuse to comply with its provisions, deny that he was a partner and at the same time claim the equity of a partner in appropriating the property in the hands of Mr. Bixler.]

"And this we instruct you is the law. If you believe that Simonton repudiated the agreement as of no validity, refused to go on under it as a partner, and denied that he ever was a partner of Bixler, and that Shuman honestly purchased the stock from Bixler at a fair price, in payment of a debt due him and a liability incurred as the bail of Bixler, then the plaintiff would have the better title and ought to recover."

Under these instructions there was a verdict and judgment for the plaintiff. Whereupon the case was removed into this court, where the answers given by the court below to defendant's 1st, 2d, and 3d points, and in charging as is printed above in brackets, were assigned for error.

*Milans & Miller*, for plaintiff in error, cited and relied in their argument on Gilbert *v.* Hoffman, 2 Watts 66; Foulke *v.* McFarlane, 1 W. & S. 297; Pendleton *v.* Richey, 8 Casey 58; Story on Part., § 86; Owen *v.* Van Uster, 1 Eng. Law & Eq. Rep. 396; 3 Bl. Com. 308; Water's Appeal, 11 Casey 527; Patterson *v.* Lyttle, 1 Jones 56; McDowell *v.* Rissell, 1 Wright 169.

*Sponsler & Junkin*, for defendant in error.

The opinion of the court was delivered, May 15th 1862, by

LOWRIE, C. J.—It seems to us that this case was very properly treated in the Common Pleas. The agreement between Bixler and Simonton is on its face merely an executory one, and it was never executed. The only act done by Simonton in pursuance of it was to allow Bixler to buy one hundred hides in their joint names, and immediately afterwards he repudiated the contract to become a partner. What, then, becomes of those hides thus bought? That is the whole question. Bixler and his vendee, Shuman, tanned them with Bixler's other hides, and, when they were ready for the market, a creditor claims that Simonton is an owner of them. Can Simonton maintain this position? For, if he cannot, his creditors cannot.

How can he? In anticipation of the execution of the partnership, he advanced his credit to enable Bixler to buy hides for the intended partnership. But that did not make him a partner any more than if he had advanced money. It certainly increased the measure of redress to which he would have been entitled if

[Rice *v.* Shuman.]

Bixler had violated the executory agreement, but it vested no title in him to any of the property; that could be done only by the completed fact of partnership. The hides were bought for that tannery, and never intended to be joint property unless both should become partners in the tannery. Simonton rejected the partnership, and therefore had no title to the hides bought for it. It would be strange if he should own half the leather made from them without his being a partner.

Judgment affirmed.