Ole G. McCracken et al.

v.

The People of the State of Illinois.

*Opinion filed April 20, 1904.*

1. Indictment—*when an indictment for larceny as bailee is sufficient.* An indictment for larceny as bailee is sufficient which charges the crime substantially in the words of the statute defining the offense, and it is not necessary to allege the particular facts constituting the crime, as in case of larceny at common law.

2. Verdict—*verdict in criminal case will stand unless there is a well founded doubt of guilt.* The verdict of the jury in a criminal case will not be set aside by a court of review on the facts, unless there appears, from all the evidence, a reasonable and well founded doubt of the guilt of the accused.

3. Criminal law—*one assisting bailee to commit larceny is a principal.* That one of the two persons jointly indicted for larceny as bailees received his share of the money from his co-defendant, and not from the owner, as his agent, does not prevent his conviction as a principal, where he aided and abetted the other defendant in obtaining the money from the owner and in the conversion thereof.

Writ of Error to the Criminal Court of Cook county; the Hon. George Kersten, Judge, presiding.

Heron, Long & Stanton, for plaintiffs in error.

H. J. Hamlin, Attorney General, (Charles S. Deneen, State's Attorney, and John R. Newcomer, of counsel,) for the People.

Mr. Justice Wilkin delivered the opinion of the court:

The plaintiffs in error, Ole G. McCracken and Enos E. McEldowney, were indicted by the grand jury of Cook county charged with larceny as bailees. The indictment alleged that the plaintiffs in error, on the first day of April, 1901, fraudulently and feloniously did embezzle and fraudulently convert to their own use a large amount of personal goods, funds, money and property, (describ-

ing current money of the United States in various denominations, bank bills and gold and silver coin of various denominations,) all of the value of $200; also one draft, the same then and there being an instrument of writing for $300, then and there of the value of $300, being the personal goods, funds, money and property of one Henry M. Ramey, which said property had been delivered to the said plaintiffs in error as bailees. In subsequent counts the form of the charge included an allegation that the property was entrusted to the defendants as bailees; that they were agents in the employ of Henry M. Ramey, and that the property was received as such agents, etc. A motion was made to quash the indictment, which was overruled, and upon a hearing before the court and a jury, plaintiffs in error were found guilty as charged in the indictment and sentenced to the penitentiary.

The facts in the case are substantially as follows: Henry M. Ramey was an old man about seventy-five years of age, who lived in Ohio and had an incurable disease. He was desirous of going to Chicago and getting into the Home for Incurables, situated in the southern portion of the city, which is an institution for the care of elderly people who are afflicted with incurable diseases. If, at the time of the admission of patients, they are able to do so, they are expected to pay at least something to the home, the amount depending altogether on the particular case. Ramey had a niece in Chicago,—a Mrs. Amelia Browder, who lived in the same building and on the same floor with the defendant McEldowney, and they were intimate friends. There was considerable talk between McEldowney and Mrs. Browder, and between the former and the defendant McCracken, with reference to getting the old gentleman into the home. In several of such conversations it was suggested that the old gentleman bring at least $300 with him when he came from Ohio for the purpose of securing his admission, and such a request was written to Ramey by his niece, Mrs. Browder.

Some two or three weeks prior to Ramey's arrival in Chicago Mrs. Browder informed plaintiffs in error that her uncle had finally obtained the $300 from friends in Ohio and would bring it with him. When he arrived he was met at the train by McEldowney and taken to the home of Mrs. Browder, and the next day McEldowney took McCracken up to the house to see him, and introduced him as a friend who would assist in getting him into the home. After this there were many conversations between the parties, and the plaintiffs in error visited the home and talked with Mr. Mitchell, the general manager, concerning Ramey's admission. Finally Ramey gave McEldowney the draft for $300 and McEldowney placed it in the bank in his own name, and afterwards, in conversations between both of the plaintiffs in error and the superintendent of the home, they stated to him on different occasions that they thought it possible that Ramey could raise at least $100 to secure his admission. Arrangements were finally completed whereby the old gentleman was to be admitted upon the payment of that sum. Plaintiffs in error signed a contract to the home at the time of Ramey's admission, whereby they agreed to provide him with proper clothing during his residence in the home, take care of his body in event of his death and provide it with a suitable burial. The $100 was paid to the home and $25 had been previously paid to McCracken by McEldowney, and the remainder of the $175 was drawn out of the bank, McEldowney retaining $100 and paying McCracken $75. About one year after this took place the home learned the facts and sent for plaintiffs in error and demanded that the funds be turned over to the home. This they refused to do, and the result was their indictment and conviction, as above stated.

The first ground of reversal insisted upon is that the indictment is insufficient, in that it fails to allege the facts which constituted the bailment, and the case of *Johnson* v. *People*, 113 Ill. 99, is relied upon as sustaining

the point. That case is clearly distinguishable from this. The indictment here is not for a common law offense, but is for the crime of larceny as bailee, as defined by our statute. If it had been for larceny by the common law it would have been necessary to set out the particular facts which constituted the crime, as held in the case cited; but we have held in many cases, where the offense is statutory it is sufficient to allege it in the words of the statute, provided it sufficiently defines the crime. (*Strohm* v. *People,* 160 Ill. 582; *Meadowcroft* v. *People,* 163 id. 56.) This indictment charges plaintiffs in error with larceny as bailees in substantially the words of the statute, and was therefore good under the foregoing decisions, and the trial court committed no error in overruling the motion to quash.

Objection is next made to the refusal of instructions numbered 1, 3 and 4½ asked by the defendants, and to the giving of the seventeenth at the instance of the People. Those refused were drawn upon the theory that Ramey was not the owner of the property at the time of the alleged embezzlement. They did not correctly state the law applicable to the facts in the case, and for that reason were properly refused. But in addition to this fatal objection to each of them, the fourth requested by the defendants, and given as modified, correctly stated all the elements constituting the crime charged and necessary to be proved. The objection to the seventeenth instruction given on behalf of the People is, that it specifically points out the accused and calls attention to their testimony, stating that if they have willfully and corruptly testified falsely to any fact material to the issue the jury had the right to entirely disregard their testimony, etc. The contention is, that it erroneously calls particular attention to the defendants instead of relating to the witnesses generally. It is substantially in the language of instructions approved in *Hirschman* v. *People,* 101 Ill. 568, *Leigh* v. *People,* 113 id. 372, and *Siebert*

v. *People*, 143 id. 571.   There was no error in giving the instruction as asked.

Complaint is next made of certain statements made by the State's attorney, in his closing argument to the jury, with reference to the insolvency of plaintiffs in error.   A contract was introduced in evidence by plaintiffs in error, signed by them, in which they agreed to furnish certain clothing and care for the body of Ramey at his death.   This contract was delivered to the home at the time Ramey was admitted.   It appears from the evidence that for one year after his admission plaintiffs in error had not paid anything for clothing or other necessaries under that contract, and upon the argument before the jury their counsel insisted that the $100 which they had each retained was in consideration of the obligation which they had assumed in signing said contract.   In reply to this argument, and in discussing the evidence in the case, the State's attorney made the remarks complained of.   We think, from an examination of the argument of counsel on either side, the remarks objected to were not improper, but were in reply to those which had been made by counsel for the defendants.

It is also insisted that the verdict is not supported by the evidence, and for that reason the judgment of conviction should be reversed.   It was admitted by both of the defendants that out of the $300 they each received $100.   Ramey testified that he gave the money or draft to McEldowney, with instructions to pay it to the home when he (Ramey) was admitted, and that McEldowney agreed to do so.   He further testified that he had numerous conversations with both defendants upon the same subject, in each of which the money was mentioned, they agreeing to pay the $300 to the home, and also that on at least one occasion he stated to McEldowney that he hoped to be able to reward him for his trouble in assisting him in getting into the home, and McEldowney replied, "I am not working for money, and all I wish is to

assist you to get into the home." The testimony clearly shows that the old man did not know until more than a year after he had been admitted that the home did not receive the $300, and Mrs. Amelia Browder testified that she heard McEldowney tell him that it would be necessary for him to pay $300 in order to get into the home, and that during all the conversations between her uncle and the defendants she never heard either of them say a single word about taking or receiving any portion of the $300 for their services. The evidence also shows that they frequently went to the home and had conversations with the general manager, and on several occasions told him they believed the old gentleman might possibly be able to raise $100 among his friends, and that they then well knew that he had provided $300 and had paid it over to McEldowney, which was in the bank in his (McEldowney's) name, and that they were at that time trying to induce the general manager to receive him for $100 and at the same time impressing Ramey with the belief that it would be necessary for him to pay $300. There is also evidence in the record to the effect that on the day he was admitted McEldowney had by some means obtained possession of certain papers and agreements which had been sent to Ramey by the home through the mail for his signature, and that McEldowney had signed the same himself, and had McCracken sign them, without allowing the papers to get into Ramey's hands, apparently for the purpose of concealing the fact that they were not paying the whole of the $300 to the home, the papers themselves containing the statement that Ramey was to be admitted upon the payment of but $100. McEldowney kept the papers in his own possession when he took Ramey to the home, and the latter did not know at any time where they came from, when they were signed or what they contained. It is true that many of these facts were denied by the defendants, but their guilt or innocence was a question to be determined by the jury from all the

facts and circumstances proven upon the trial. They saw the witnesses and heard them testify, as did the presiding judge, and it is well settled that this court will not, under such circumstances, set aside the verdict unless we are able to say, after a consideration of all the evidence, that a reasonable and well-founded doubt of the guilt of the accused arises therefrom. There is an abundance of evidence in this record to the effect that the conduct of the defendants in their dealings with Ramey and the Home for Incurables was inconsistent with honesty and fair dealing, and we are convinced that the verdict below is fairly supported by the evidence.

It is insisted by counsel for McCracken that he was wrongfully convicted, for the reason that the $300 was received by McEldowney, and on the day Ramey was taken to the home he paid McCracken $100, and that no part of the $300 was in the latter's hands until that time, and that he is not, therefore, guilty as charged in the indictment. It is the law of this State that he who stands by and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised, encouraged, aided or abetted the perpetration of a crime, shall be considered a principal and punished accordingly. We think the evidence before the jury warranted the conclusion that the defendants acted and co-operated together in the conversion to their own use of the $200. It is therefore unimportant which one of them actually received the money from Ramey.

On the whole record we find no substantial grounds of reversal, and the judgment of the criminal court of Cook county will accordingly be affirmed.

*Judgment affirmed.*