HANRAHAN ET AL., RESPONDENTS, *v.* FREEMAN ET AL., APPELLANTS.

(No. 2,433.)

(Submitted June 18, 1907. Decided June 29, 1907.)

[90 Pac. 793.]

*Contracts—Partnership—Purchases—Liability—Nonsuit.*

Contracts—Partnership—Purchases—Liability.

    1. By a written agreement between F. and I., the former delivered to the latter a number of Angora goats, to be taken care of by I. at his own expense, the parties to share in the increase. It was expressly stipulated that nothing contained in the contract should be construed as creating a partnership, ·except as to goats taken from third parties for care and handling. Articles of merchandise were furnished by plaintiffs to I. personally, and their books showed an account with him alone. *Held,* in an action against F. and I. to recover for goods sold, that in the absence of a showing that F. had by her conduct estopped herself to deny liability, I. alone was responsible for the merchandise furnished, and that the district court erred in denying a nonsuit and in directing a verdict for plaintiffs.

Appeal—Reversal—Supreme Court—Judgment.

    2. The supreme court, in reversing a judgment in an action at law for error in denying a nonsuit and· directing a verdict for plaintiff, will not instruct the district court to enter judgment for appellant.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by J. C. Hanrahan and others against Allie M. Freeman and others. From a judgment in favor of plaintiffs, defendants appeal. Reversed and remanded.

*Messrs. Galen & Mettler,* for Appellants.

One who deals with a member of a nontrading partnership has the burden of proving that the contracting partner had authority to enter therein. (*Cavanaugh* v. *Salisbury,* 22 Utah, 465, 63 Pac. 39.) A partner in a nontrading partnership has *prima facie* no authority to bind the firm or another partner in a transaction not within the scope of the partnership business, and he who seeks to hold the firm liable by virtue of such transaction has the burden of showing that the contracting partner had authority to enter therein. (*Guthiel* v. *Gilmer,* 23 Utah, 84, 63 Pac. 817.) What is necessary for carrying on the business of the firm in the ordinary way, is the test of its scope. (17 Am. & Eng. Ency. of Law, 1st ed., 992.) In a nontrading partnership, the case must be left to be decided upon its particular facts, and in order to hold the firm, it must be affirmatively established that the acting partner had the power to make the contract in question. (Id., 994, citing *Smith* v. *Sloan,* 37 Wis. 289, 19 Am. Rep. 757.) Where a purchase is made individually or in the name of the firm, if the purchase is outside of the real or apparent scope of the partnership business, the firm is not bound. (Id., 1008, note 6.) The power to purchase is not presumed and must be established by proof to authorize a recovery. (Id. 1009, note 2.) If the same is made upon the individual credit of the buying partner personally, the fact that the goods are afterward turned over by him to the firm does not render the firm responsible for the purchase price. (Id., 1010, note 3.) A transaction not within the scope of the firm business does not bind the partners who do not participate in it or ratify it, though the plaintiff believed that it was within the scope of the firm business. (*Nolan Co.* v. *Simpson,* 74 Tex. 218, 11 S. W. 1098; see, also, *Smith* v. *Sloan,* 37 Wis. 292, 19 Am. Rep. 757; *Irwin* v. *Williar,* 110 U. S. 499, 4 Sup. Ct. 160, 38 L. Ed. 225; *Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201.)

*Messrs. Carpenter, Day & Carpenter,* for Respondents.

MR. JUSTICE SMITH delivered the opinion of the court.

Action to recover the sum of $354.76 for goods, wares and merchandise alleged to have been sold and delivered to Mrs. Allie M. Freeman and A. W. Ide, as copartners.

It appears from the testimony that Mrs. Freeman and Ide entered into a written agreement, by the terms of which Mrs. Freeman was to deliver to Ide a certain number of Angora goats, of which she was the owner. It was expressly stipulated that the title to said goats should remain in her, and that nothing in the contracts should be construed as creating a partnership, except as to goats taken from third parties for care and handling, Ide was to take care of the goats at his own expense, and the parties were to share in the increase. It was agreed that, if they took over any goats belonging to third parties, Ide was also to assume the active care and handling thereof "the same as the original band" of Mrs. Freeman, and that each of the parties should share equally in the expenses of such care and handling, and in the percentage of wool and increase of animals allowed for their services. They afterward took over a band belonging to the Northern Angora Goat and Live Stock Company. The date of this agreement between Ide and Mrs. Freeman is November 3, 1903. Prior to this time Ide had an open account with the plaintiffs, upon which a balance was unpaid. He arranged with the plaintiffs for a supply of goods for the goat ranch, saying that the money would be furnished by George O. Freeman, who was the husband of Mrs. Freeman, the defendant, but that the goods should be charged to him, Ide, and he would see that they were paid for. In the agreement between Mrs. Freeman and Ide it was provided that, in the event she advanced any money to Ide during the life of the contract, she should be repaid by him. Plaintiffs continued to furnish Ide with goods which he used for himself and the men employed by him in handling the goats. They never knew Mrs. Freeman in the transaction.

On August 7, 1905, Mrs. Freeman began an action against Ide, wherein she alleged that they were members of a "limited copartnership," and prayed .for an accounting. In this action the defendant Frank D. Miracle was appointed receiver of all the property of the so-called copartnership, and now has the proceeds of the same in his possession.

The goods furnished by the plaintiffs were charged to Ide's original account on their books, and it appeared on the trial that plaintiffs at one time brought suit against the Northern Angora Goat and Live Stock Company for this same account, and afterward withdrew the same.

At the close of plaintiffs' case defendants moved the court below for an order of nonsuit, which was refused, and after defendants had offered to introduce certain testimony, which was rejected, plaintiffs moved the court to direct a verdict in their favor for the full amount sued for, which motion was granted, and, from a judgment entered on such verdict, defendants appeal.

It is contended that the court erred in refusing to grant defendants' motion for a nonsuit and in directing a verdict for the plaintiffs. It seems clear that under the written agreement no partnership existed between Mrs. Freeman and Ide, if there was any partnership at all, until after they took over the goats belonging to the Northern Angora Goat and Live Stock Company and in relation to those animals alone. It is true that contractual relations existed prior to that time; that is to say, Mrs. Freeman contributed the goats and Ide was to contribute his services, paying all expenses of the business. It was a part of Ide's contract with Mrs. Freeman to furnish these goods so supplied to him by plaintiffs. They were not supplied for the joint account at all, but to Ide personally, and, unless Mrs. Freeman has so conducted herself as to be placed in a position where she may not deny liability, she cannot be compelled to pay for what Ide agreed with her to furnish himself as an offset to the goats furnished by her. She is no more

liable for his personal expenses than he would be for hers. In the light of the phraseology of her contract with Ide, the fact that she brought an action to dissolve what she called a limited partnership is not inconsistent with the defense she interposes here.

We find from the testimony of one of the plaintiffs that they did not know Mrs. Freeman in the transaction. Ide seems to have had good credit with them, and they charged the goods to him personally. He appears to have carried out his contract with Mrs. Freeman in this regard. It seems significant that plaintiffs first brought suit against the Northern Angora Goat and Live Stock Company for this same account, and now sue the so-called partnership of Ide & Freeman, when Ide. was the only person they knew in the business and their books show an account against him alone.

The question as to whether plaintiffs can recover from Ide & Freeman for goods, if any there were, actually used in connection with the business of handling the Northern Angora Goat and Live Stock Company's goats is not presented to us. If plaintiffs have such a claim, they must show what goods were so furnished. Under the testimony in this record, it would have been impossible for the jury to segregate such goods from the whole amount furnished, had the court allowed the case to go to the jury. So that, in any view of the case, defendants' motion for a nonsuit should have been granted, and the court erred in directing a verdict for the plaintiffs.

This is an action at law, and we cannot therefore instruct the court below to enter judgment for defendants as is suggested in the brief of their counsel.

The judgment of the district court of Lewis and Clark county is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.