STATE, RESPONDENT, *v.* BROWN, APPELLANT.

(No. 2,610.)

(Submitted January 14, 1909. Decided February 15, 1909.)

[99 Pac. 954.]

*Criminal Law—Larceny by Bailee—Indictment—Partnership— Executory Agreement—Evidence—Exclusion—Harmless Error.*

Criminal Law—Motion in Arrest of Judgment—Appeal.
    1. An appeal does not lie from an order overruling a motion in arrest of judgment. Such an order is reviewable only on appeal from the judgment.
Same—Larceny by Bailee—Indictment—Sufficiency.
    2. An indictment charging defendant with larceny as bailee in the words of the statute (section 8642, Revised Codes) and in the form

prescribed by section 9148, was sufficient, and not open to the objection that it failed to describe the character of bailment.

Same—Executory Agreement of Partnership—Larceny by Bailee.

3. While partners cannot commit larceny of the funds or property of the partnership, this immunity does not attach so long as the partnership agreement is executory only and the conditions of the agreement remain unfulfilled.

Same.

4. Defendant and the prosecuting witness entered into an agreement to engage as partners in a business venture, the former furnishing the experience and the latter the means. The complaining witness turned over certain sums of money to defendant for the purpose of obtaining a license, purchasing supplies, etc., who thereupon appropriated the money to his own use and absconded. *Held,* that the contract of partnership was never executed, but that defendant repudiated it by his conduct, and thus became the bailee of his prospective partner.

Same—Evidence—Exclusion—Harmless Error.

5. Error in excluding an offer of proof tending to show that the complaining witness in a prosecution for larceny by bailee had turned over to defendant less money than he claimed, was cured by the admission of testimony which included all the evidence in the offer.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

C. M. BROWN was convicted of grand larceny; and, from the judgment and from an order denying a new trial, he appeals. Affirmed.

*Mr. Charles L. Harris,* for Appellant.

The indictment in this case is defective because the bailment is not set out. (*Carter* v. *State,* 53 Ga. 326; *People* v. *Poggi,* 19 Cal. 601; *People* v. *Peterson,* 9 Cal. 315; *People* v. *Cohen,* 8 Cal. 44; *Wilbur* v. *Territory,* 3 Wyo. 268, 21 Pac. 698.)

It is no crime in the state of Montana for one partner to appropriate the money or property of the partnership to his own use and benefit. All the complaining witness Wagner is entitled to in the partnership is what he paid to defendant. He may have an accounting and recover the amount due from defendant in a civil action. The defendant has not committed any crime. (*State* v. *Reddick,* 2 S. D. 124, 48 N. W. 846; *Napoleon* v. *State,* 3 Tex. App. 522; *State* v. *Kent,* 22 Minn. 41, 21 Am. Rep. 764; *Reed* v. *State,* 16 Tex. App. 586; *Dancy* v. *State,* 41 Tex. Cr. 293, 53 S. W. 635, 886; Horton's Criminal

Law, 10th ed., sec. 1054; 1 McClain's Criminal Law, secs. 549,
550.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. L. Mur-
phy,* Assistant Attorney General, for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion
of the court.

The defendant, charged by indictment with the crime of
grand larceny, was convicted and sentenced to a term of im-
prisonment in the state penitentiary. He has appealed from
the judgment and an order denying him a new trial. He has
also attempted to appeal from an order overruling his motion
in arrest of judgment. He contends that the facts stated in the
indictment do not constitute a public offense, and that the
court erred to his prejudice in its rulings in admitting and
excluding evidence and in denying his motion for a new trial
upon this ground, and also upon the ground that the verdict is
contrary to the evidence.

1. An appeal does not lie from an order overruling a motion
in arrest of judgment. It is not enumerated in the statute
among the appealable orders. (Revised Codes, sec. 9397.)  It
is an intermediate order affecting the judgment, and may be re-
viewed only on appeal from the judgment. (Revised Codes,
sec. 9416; *State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 376.)

2. The charging part of the indictment is that "one C. M.
Brown, late of the county of Yellowstone aforesaid, * * *
committed the crime of grand larceny, in that the said C. M.
Brown, then and there being, and then and there having in
his possession, custody, and control, as a bailee of one P. S.
Wagner, three hundred and five dollars ($305.00) lawful money
and currency of the United States of America, of the value of
three hundred and five ($305.00) dollars, then and there the
money and property of the said P. S. Wagner, * * * did
then and there wrongfully, unlawfully, and feloniously appro-
priate said money and property to his own use, with the intent

then and there in him, the said C. M. Brown, to deprive the true owner of his said property,'' etc. The objection made to it is that it does not allege the facts showing the character of the bailment. It was found under the provisions of section 8642, Revised Codes, which declares: ''Every person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person either    *    *    * (2) Having in his possession, custody or control, as a bailee    *    *    * any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner, or person entitled to the benefit thereof, steals such property and is guilty of larceny.''

It will be observed that the indictment follows almost literally the words employed in the statute to describe the act denounced as larceny. The rules by which its sufficiency must be determined are found in Revised Codes (section 9145). For the guidance of the pleader a form is prescribed. (Section 9148.) This provision was pursued in this case. Section 9156 declares: ''The indictment or information is sufficient, if it can be understood therefrom,    *    *    * (6) That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended. (7) That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case.'' These provisions were intended to relax the technical rules which prevailed at the common law, and to simplify the procedure to the end that regard to substance, rather than form, should be the rule of interpretation. The indictment here meets the test of these simple requirements. (*State v. Stickney*, 29 Mont. 523, 75 Pac. 201.)

Section 8642, *supra,* declares the offense known at the common law as embezzlement to be larceny, and the elements constituting it are stated; the purpose being to dispense with the

trespass which was an element in every larceny at common law.
In jurisdictions where there are similar statutes, the general
rule is that a charge following the words of the statute is suffi-
cient.   Referring to the American decisions on this subject, Mr.
Bishop in his work on Statutory Crimes says: "Sec. 422.   Such
decisions as our own books afford require the allegations to be
special on the statute.   Therefore, as in other indictments on
statutes, the statutory terms may be so far pursued as to iden-
tify the statute and comprehend the offense in full.   The bail-
ment must be averred; but on principle the particulars of it
need not be so, because it is a matter of inducement, and so the
mere general allegation will suffice."   (See the following cases:
*People* v. *Hill*, 3 Utah, 334, 3 Pac. 75; *People* v. *Tomlinson*,
66 Cal. 344, 5 Pac. 509; *McCracken* v. *People*, 209 Ill. 215,
70 N. E. 749; *Strohm* v. *People*, 160 Ill. 582, 43 N. E. 622;
*State* v. *Evans*, 27 Utah, 12, 73 Pac. 1047; *State* v. *Keller*, 8
Idaho, 699, 70 Pac. 1051; *State* v. *Whitworth*, 30 Wash. 47, 70
Pac. 254; *Commonwealth* v. *Welsh*, 7 Gray (Mass.), 324; *State*
v. *Startup*, 39 N. J. L. 423; *State* v. *Kentner*, 178 Mo. 487, 77
S. W. 522.)

3. Since a statement of the facts appearing in the evidence
is necessary to an understanding of the other contentions made,
we can most conveniently consider them by reversing the order
in which they are urged in counsel's brief.   There is some con-
flict in the evidence as to the amount of money involved in the
dealings between the parties, but there is substantial agreement
among the witnesses as to all other material facts.   The facts
may be stated briefly as follows: Wagner, the prosecuting wit-
ness, and the defendant, both residents of Yellowstone county,
but theretofore comparative strangers to each other, met casu-
ally and formed acquaintance at Billings on March 24, 1906.
They soon became intimate.   Wagner had theretofore worked as
a sheepherder and had saved some money.   The defendant had
been working as a common laborer during the winter.   Whether
he had knowledge of Wagner's financial condition, except that
he had saved some money, does not appear.   On that or the fol-
lowing day, upon being questioned by Wagner as to what he

intended to do, defendant stated to him that his present inten-
tion was to go to Wyoming ''to start a saloon.'' Wagner ex-
pressed the wish to join him in this enterprise, thinking, as he
said, he would make more money than he could at his present
employment, though he knew nothing of the business. There-
upon, after some negotiations, the particulars of which are not
at all material, they entered into an agreement to go to Wor-
land, Wyoming, and open a saloon as partners. Wagner was
to furnish the money to obtain a license, a tent in which to in-
stall their business until they could secure a building, the glass-
ware necessary for use in the business, and a stock of cigars.
The defendant had no money, but by means of credit which he
could secure from an acquaintance he was to furnish whisky
and beer to the amount of $500. Wagner, having satisfied him-
self by inquiry that defendant had had experience in that busi-
ness and could secure the required credit, thereupon paid to
defendant $175 to send forward to the authorities in Wyoming
for the license, $80 with which to purchase the tent, and $50
with which to buy the glassware and cigars. These payments
were made at different times on March 28, as the details of the
agreement developed what expenditures were necessary to start
the business. It seems that the intention of both parties was to
send the money for the license on that day. In any event, they
both went to the postoffice to secure money orders for that pur-
pose, but found that they were too late to secure them; the
office having been closed. During the evening or the following
day, the defendant informed Wagner that he had already se-
cured the tent, the whisky, and the beer. This statement was
afterward found to have been false. Pending the negotiations
both were drinking more or less. That evening and night the
two, in company with another, spent in a drunken carouse
visiting various drinking places and brothels, where both spent
money freely, Wagner finally losing or being robbed of all he
had left upon his person, amounting to a considerable sum.
This, or a part of it, however, he recovered early in the morn-
ing on the 29th. According to defendant's story, they were to
take a train for Wyoming on that morning. Wagner is not

clear as to what he did during that day or where he spent the
following night. He states that the arrangement was that they
were to take the train together on the morning of the 30th.
The fact is that either on the morning of the 29th or 30th the
defendant left Billings and went to Wyoming, but not to Wor-
land, the place agreed upon. He did not open a saloon. Wag-
ner did not know where he had gone, and presumably did not
see him again until he was arrested upon the charge preferred
in the indictment. The defendant admitted that he had re-
ceived $150 from Wagner. He denied that he received any
other sum, and stated that during their carouse on the evening
of the 28th he had returned to Wagner $100 of the amount re-
ceived. Wagner denied this.

Counsel earnestly contend that these facts show conclusively
that the negotiations between Wagner and the defendant re-
sulted in the formation of a partnership, and that, since one
partner cannot commit larceny by taking and appropriating
to his own use the property or moneys belonging to the part-
nership, the court erred in not directing the jury to acquit the
defendant, and also in not granting him a new trial on the
ground that from no point of view can a conviction for larceny
be sustained. Under the statute (section 8642, *supra*) one can-
not be convicted of larceny except upon the taking of the per-
sonal property of another as therein declared. A partner cannot
commit larceny of the funds or property of the partnership
of which he is a member, because the interest or ownership of
such partner extends to every portion of its property. (Re-
vised Codes, sec. 5469.) Each partner combines in himself at
once the character of principal and agent, and may possess and
dispose of the firm's funds and property, even to the extent
of appropriating them to his own use, by withdrawing them
from the common fund. But a distinction must be made be-
tween an agreement to form a partnership and the consumma-
tion of the agreement. On this subject Mr. Parsons says: "There
must be a lawful and valid agreement to enter into partner-
ship, and this contract must be executed; and therefore courts
do not declare persons to be partners under an agreement for a

partnership without proof that some joint transactions have
been undertaken in accordance with it, or some joint benefit
received.'' (Parsons on Contracts, sec. 6.)  Again, the same
author says: ''If the agreement of copartnership is executory
and conditional, no partnership is created by it until all the
conditions are fulfilled.'' (Section 12.)

The question whether or not a partnership has in fact been
created has most frequently arisen in cases where one is sought
to be charged by a third person as a partner, as in *Atkins* v.
*Hunt,* 14 N. H. 208; but the distinction pointed out by Mr.
Parsons is generally recognized by the courts, whether in this
class of controversies or those in which the rights of the par-
ties *inter sese* are involved. (*Hanrahan* v. *Freeman,* 35 Mont.
584, 90 Pac. 793; *Hayhoe* v. *Burge,* 9 Q. B. 431; *Howell* v.
*Brodie,* 37 Q. B. 499; *Wilson* v. *Campbell,* 5 Gilm. (Ill.) 383;
*Goddard* v. *Pratt,* 16 Pick. (Mass.) 412; *Rice* v. *Shuman,* 43
Pa. 37.)  In *Wilson* v. *Campbell, supra,* the court observed:
''A mere agreement to form a partnership does not in itself
create a partnership.  The parties must enter on the execution
of the agreement before the relation of partners exists between
them.  While the agreement remains executory, if one of them
refuses to carry it into effect, the only remedy of the other is
by an action at law for the violation of the agreement or by a
bill in equity to enforce specifically its performance.''

Under the facts of this case, we are of the opinion that, while
there was an agreement to form a partnership, the agreement
was never executed so far as to entitle the defendant to claim
any interest in the sums of money paid him by Wagner.  Wag-
ner had no knowledge of, or experience in, the business, and
naturally, after informing himself as to the experience and
qualifications of the defendant, intrusted him with the differ-
ent amounts paid him for the purpose of putting the agreement
into execution.  For the time being, and until this had been
accomplished, the defendant having done his part, he was merely
the bailee of Wagner, and had no other interest.  Having failed
to perform his part, and by his behavior in this regard repudi-
ated the agreement, he could not appropriate the funds to his

own use under the claim that he was a partner. He could not make a defense to an action at law by Wagner to recover the amount of money received for his use and benefit, nor would he be in position to resist an action for damages for failure to carry out his agreement. Any other conclusion could not find support on any just principle. *Napoleon* v. *State,* 3 Tex. App. 522, is a case directly in point, both in fact and principle. The defendant was charged with embezzlement, and made the contention that, being a partner of the prosecuting witness, he could not be convicted. The court overruled him, and on appeal the judgment was sustained, on the ground that, though a partnership agreement had been made, it had never been consummated, and hence that the defendant could not claim immunity on the ground that he was a partner.

4. Of the several assignments questioning the action of the court in its rulings upon the evidence, only one requires notice. On cross-examination the prosecuting witness was asked: ''Q. You spent how much money that night for liquors?'' The time referred to was the evening of March 28. Upon objection by the county attorney, the witness was not permitted to answer. Thereupon counsel made an offer to prove the following: That the prosecuting witness on the evening mentioned went with defendant to various drinking places and brothels; that he there spent his money for beer and wine; that, having spent all he had, he called upon defendant for $100; that he claimed that he had been robbed, but afterward recovered a considerable sum from one of the inmates of a brothel; and that he was so intoxicated that he could not remember the in·cidents of the evening. This offer was also rejected. The theory of counsel evidently was that the defendant had received only $150, as he subsequently stated, and that, if it could be shown that he had returned $100 of this amount, he could not in any event be held guilty of grand larceny. It was competent to ascertain the amounts spent by the witness as tending to show that he had exhausted his funds, and that the necessity had arisen to call on the defendant to supply him, thus giving support to counsel's theory of the case. It will be observed,

however, that the offer did not refer to any specific sum or sums at all, but only to the general result of the evening's debauch, and therefore did not include the evidence apparently called for by the inquiry. Upon further cross-examination, it was made to appear that the witness between his expenditures and the theft perpetrated upon him during the evening or night had gotten rid of all the money he had with him. He was also fully questioned without objection, as to his intoxication and the amounts, if any, he had received back from the defendant. He denied flatly that he was intoxicated, as also that he received any money from the defendant. While the ruling was erroneous in excluding the evidence called for, in view of the fact that all the evidence included in the offer, so far as it could be ascertained from the witness, was afterward admitted, it seems clear that no prejudice was done by it. The defendant gave his version of the story, but did not undertake to state specific amounts further than to say that he had upon request returned to the prosecuting witness $40 at one time and $60 at another; the reason for the request being that the defendant did not care to show other persons present the money he had with him. If we presume, as we must, that the only evidence sought by the question was that included in the offer to prove, it is obvious that the ruling did not result in prejudice.

On the whole, we think that the defendant was not prejudiced by any ruling during the trial, and that the judgment and order should be affirmed. It is so ordered.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 10, 1909.