The People of the State of Illinois, Defendant in Error,
v. John Bain et al., Plaintiffs in Error.

Gen. No. 36,728.

Heard in the second division of this court for the first district at the June term, 1933. Opinion filed March 6, 1934. Rehearing denied March 21, 1934.

HARRY OLSON and SANFORD OLSON, for plaintiffs in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, GRENVILLE BEARDSLEY and ALBERT J. WOLL, Assistant State's Attorneys, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This cause originated by the return of an indictment in the criminal court of Cook county on February 17, 1932, charging the six defendants with conspiracy to obtain money and other property by false pretenses, etc. The defendants, Mulholland and Buhlig, were granted a severance and, on the trial of the other four defendants, they testified as witnesses for the State. A jury having been waived by agreement the trial was had before the court during the summer of 1932, at which much oral and documentary evidence was introduced. The transcript of the record consists

of more than 10,000 pages, and the printed abstract of more than 800 pages. For the State 114 witnesses testified. Each of the four defendants testified in his own behalf and defendants called more than 70 witnesses. The prosecution arose out of the closing on June 9, 1931, of 12 Chicago banks, known as the "Bain Banks," which were practically under the control of the principal defendant, John Bain. The 12 banks were organized under the laws of the State of Illinois and were named and known as: West Englewood Trust & Savings Bank; Armitage State Bank; Auburn Park Trust & Savings Bank; Brainerd State Bank; Bryn Mawr State Bank; Chatham State Bank; Chicago Lawn State Bank; Elston State Bank; Ridge State Bank; Stony Island State Bank; West Highland State Bank, and West Lawn Trust & Savings Bank. John H. Bain and Robert A. Bain are sons of John Bain, and W. Merle Fisher is his son-in-law. At the conclusion of the trial on August 25, 1932, the court entered the following findings and judgment:

"That the People have not sustained by evidence beyond a reasonable doubt, within the rule laid down in *People v. Clark,* 329 Ill. 104, that the defendants conspired as charged in the indictment to receive deposits knowing the bank to be insolvent, or to keep the banks open to receive deposits when they knew the banks were insolvent as charged in other counts of the indictment, and the court finds that the defendants cannot be held guilty under those counts"; that *"as to all other counts* in the indictment, the court *finds each and every one of the defendants guilty as charged* and fixes the punishment of the defendant, John Bain, whose age the court finds to be 64, at imprisonment in the penitentiary for a term of not less than one year or more than five years; and the court adjudges that the defendants, John H. Bain, W. Merle Fisher and Robert A. Bain, each be condemned to pay

a fine of one thousand ($1,000) dollars''; and that
''the court further finds that the defendant, John H.
Bain, is 34 years of age, that the defendant, W. Merle
Fisher, is 43 years of age, and that the defendant,
Robert A. Bain, is 29 years of age.''

On March 16, 1933, the present writ of error was
sued out and on the same day it was here ordered that
the writ be made a supersedeas upon the four defend-
ants respectively entering into certain recognizances,
with sureties, with the sheriff of Cook county. After
briefs had been filed, the People, by the State's attor-
ney, filed a written motion, accompanied with sugges-
tions and affidavits, ''to strike from the transcript of
the record the two *original* bills of exceptions incor-
porated therein.'' On November 16, 1933, after coun-
ter suggestions and counter affidavits had been filed,
the motion was reserved to the hearing. During the
oral argument on January 3, 1934, leave was given to
counsel for defendants to present memoranda of addi-
tional suggestions and authorities bearing upon one
of the points made in their original printed brief, and
the memoranda were presented and have been consid-
ered.

The indictment consisted of 73 counts. Those on
which the court found that the four defendants could
not be held guilty are numbered 27 to 50, inclusive, and
they need not now be considered. The other 49 counts,
on all of which the court found the defendants guilty
as charged, may be divided for convenience into three
groups, of which counts 1 to 14, inclusive, form group
No. 1; counts 15 to 26, inclusive, and counts 51 to 62,
inclusive, group No. 2; and counts 63 to 73, inclusive,
group No. 3.

Of said group No. 1, count 1 charges the four de-
fendants, and Mulholland and Buhlig, on June 9, 1931,
in said county, with unlawfully, fraudulently and ma-
liciously conspiring together, and with other unknown

persons, to unlawfully obtain from the public generally the sum of $13,000,000, and divers checks, drafts, notes, bonds, and other instruments in writing for the payment of money of the value of $13,000,000, from the public generally, "by false pretenses, and to cheat and defraud the public generally, . . . contrary to the statute," etc. (i. e., section 46 of chapter 38, Cahill's St. 1931, ¶ 116, p. 1010.) In count 2 the same charges are made as being "contrary to the law," etc. In count 3, the defendants are charged with unlawfully, etc., conspiring together, and with other unknown persons, to unlawfully obtain "from stockholders, depositors, customers, creditors," and persons about to become such, "of the West Englewood Trust & Savings Bank," an Illinois banking corporation, "the sum of $3,000,000," etc., and divers checks, etc., of that value, belonging to said stockholders, etc., "by false pretenses, etc., contrary to the statute," etc. In counts 4 to 14, inclusive, the charges are substantially the same as to each of the 11 other Bain banks.

Of group No. 2, count 15 alleges in substance that on said date, etc., John Bain was and had been for a long time the president and a director of the West Englewood Trust & Savings Bank; that John H. Bain was and had been an officer of the bank and an assistant of John Bain, performing certain powers and duties as president; that W. Merle Fisher was and had been cashier and a director of the bank; and that Walter H. Buhlig was and had been a director of the bank and the chairman of its Discount and Finance Committee. And it is charged that the six defendants, on said date, etc., knowingly, wilfully, fraudulently, etc., conspired, etc., wrongfully, etc., as officers or agents of said bank, "to buy, discount and purchase," or cause to be bought, discounted and purchased, for and on behalf of said bank, from John Bain and the other five defendants, and from firms and corporations which the six defendants controlled or were interested in, "divers

notes, mortgages, and real estate property . . . at an exorbitant, extortionate and excessive price," far in excess of their value, as they well knew, "and to thereby collusively obtain," without consideration from the bank, "for themselves and for said firms and corporations, . . . the funds, money and property of said bank, and to thereby defraud said bank, contrary to the law," etc. In counts 16 to 26, inclusive, the charges are substantially the same in relation to each of the 11 other banks. Count 51 charges a conspiracy of certain defendants named as *officers* of the West Englewood Trust & Savings Bank, and of other defendants, "to cheat and defraud said bank of its funds" and to induce it "to make excessive loans" to persons insolvent or approaching insolvency without receiving security therefor, and to make or cause to be made to themselves, as officers and agents of the bank, or to companies in which said defendants were interested, excessive loans, when they or the companies were insolvent, "thereby making such loans bad, desperate and worthless," as they well knew, and "thereby to injure said bank and to defraud it of its funds, money and property, contrary to the law," etc. In counts 52 to 62, inclusive, the charges are similar except that the other 11 banks, respectively, are named.

Of group No. 3, count 63 charges a conspiracy of certain named defendants as *officers* of the West Englewood Trust & Savings Bank, and of other defendants, to make for the bank, or cause the bank to make, loans to its officers or salaried employees, "without first having an application for said loans made and approved by the board of directors of said bank, as to security and amount, contrary to the law," etc. In counts 64 to 73, inclusive, the charges are similar, except that 10 of the other 11 banks, respectively, are named.

On February 24, 1932, the four defendants were arraigned and pleaded not guilty. Thereafter they were

given leave to withdraw their plea, and they filed a written motion to quash the indictment. Numerous grounds for the motion are specified, among which are that some of the counts are "vague, indefinite and general," and "furnish no bases from which defendants may apprehend the number, time, place or character of the transactions, if any, to be produced in evidence against them"; that some are bad for duplicity; that some, while purporting to do so, do not sufficiently charge the offense of conspiracy at common law; and that some, while charging the defendants with conspiracy to commit claimed unlawful acts as *officers* of the respective banks, do not allege that *all* defendants had any official connection with the particular bank. Subsequently, after a hearing, the court denied the motion to quash.

On June 13, 1932, the State's attorney filed a bill of particulars in the cause. Neither the record nor the abstract discloses that at any time after its filing defendants made any objections to its sufficiency, or made any motion for the filing of an additional or more specific bill of particulars. The bill of particulars, as filed, is as follows:

As to counts 1 and 2 of the indictment, the members of the public intended to be defrauded by the conspirators "include the class of persons referred to in counts 3 to 14, inclusive, and also the customers and stockholders of the *Lews Company* and of *John Bain, Inc.,* a corporation, and also persons who were owners of securities, and the various banks who were also holders of securities and indebtedness of the various trusts in the bank, in which trusts the defendants, or either of them, were interested, to wit:

"The various trusts in the various banks, numbered as follows: 4, 7, 74, 185, 190, 625, 721, 725, 915, 1032, 393, 825, 833, 1200, 1240, 1202, 687, 1060, 1063, 1090, 1051, 1006, 1002, 852, Cn-211, CB 213, 1032, 131, 149, 120, 56, 51, 49, 37, 31, 28, 8 and 6."

The false pretenses, the means by which defendants intended to effect the consummation of the conspiracy as alleged in counts 1 to 14, inclusive, "include false pretenses with reference to and concerning the value and worth of assets and resources and liabilities of the various banks mentioned, and of the Lews Company and of John Bain, Inc., and of the Trusts mentioned, and as to the solvency of the banks and worth of their various assets, and of their capital, surplus and undivided profits, and of the value of the properties and assets of the trusts mentioned, and of the firms and corporations and concerns and enterprises hereinafter mentioned and in which the various defendants or either of them were interested, which said indebtedness and securities and obligations were purchased by the divers banks and either retained or sold to divers members of the public."

The conspiracy to purchase, for and on behalf of the banks from the defendants and each of them and from the firms and corporations which they controlled or were interested in, notes, mortgages, bonds, etc., as alleged in counts 15 to 62 inclusive, "comprises premises commonly known as:" (Here follow the names of seven bank premises); the "real estate bond issues commonly known as:" (Here follow the names of 31 bond issues by name of building, etc.); the "securities and obligations written against the divers trusts herein mentioned; the stock issues of John Bain, Inc., the Lews Company, Gage Park Safe & Securities Company, Stony Island Safe & Securities Company, Auburn Park Safe & Securities Company, Chatham Building Corporation, Chicago Lawn Building Corporation, Highland Building Corporation, Hopstein Safe & Deposit Company; and the real estate bought on behalf of the banks also include the real estate bought from the building corporations and occupied by the various banks as bank buildings; the Drexel Western Investment Company and the Caledonia Company; and all

notes, signed by defendants and by the various directors of the banks, and by John Bain, Inc., and by the Lews Company, and by all officers of the banks, which have never been paid except by renewal or giving something in lieu of cash by the various parties, firms and corporations herein named, and which are now in the banks as assets of the various banks.''

Under counts 51 to 62, inclusive, ''the State will introduce the loans and discounts, stocks, bonds and other evidences of indebtedness and property, and purchases of the same made by various officers and directors of the various banks and from various firms, individuals and corporations above mentioned, and none others.''

Counts 63 to 73, inclusive, in which the conspiracy is charged to make loans to the various officers of the banks named, and to the divers trusts, firms and corporations in which the defendants were interested or which they controlled, ''refer to the various persons, trusts, firms and corporations, building enterprises and real estate properties herein mentioned, and none others.''

It appears from an interlocutory bill of exceptions (which is marked by the trial judge as having been presented on July 20, 1932, and which is contained in the present transcript as finally certified by him) that during June, 1932, and before the trial, a written motion was presented by one of the defendants, John Bain, to suppress certain evidence and certain of his personal books and records; that the motion was supported by his affidavit and that of James J. Gammonly, his bookkeeper; that an assistant State's attorney, Edwin J. Raber, presented an answer to the motion and a counter affidavit, sworn to by him; that thereafter a hearing was had on the motion, at which, in addition to the affidavits and answers, certain testimony of Gammonly and of one Edward C. Barry,

offered by the State, was presented; that defendants did not call any witnesses; and that at the conclusion of the hearing the court denied the motion, to which ruling counsel for John Bain excepted. The affidavit of Bain is in substance as follows:

That prior to November 3, 1931, there was pending in the circuit court of Cook county a chancery suit, entitled, *Seaborg v. John Bain, Inc.,* a corporation, and others; that on November 3, 1931, affiant was called as a witness and testified before Judge Feinberg; that he was examined about a stock subscription he had made to the capital stock of John Bain, Inc.; that he then stated that all of his books and papers had been turned over by him to his bookkeeper (Gammonly) and that if the court desired he would order Gammonly to bring them into court, but suggested that Gammonly be subpoenaed; that after the books, etc., had been produced, the court ordered them turned over to an accountant employed by the Straus National Bank & Trust Co., receiver for John Bain, Inc.; that without affiant's knowledge or consent said accountant turned over the books, etc., to assistant State's attorney, Raber; that had affiant known this was to be done he would have "protested, and sought an order from the circuit court to prevent it"; that following his appearance in the circuit court affiant was confined for a considerable time in a hospital because of illness, and did not learn that the books, etc., had been in Raber's hands "until approximately April 15, 1932"; that affiant is informed and believes and so states that the books, etc., "have extensively been used," by the State's attorney and assistants "in the discovery and preparation of evidence to be used in the present prosecution," and that the books, etc., "or information derived from them, or witnesses who have been discovered because of them, are to be used against him in the present prosecution"; and that, because of the

foregoing, "affiant says that the rights and privileges guaranteed to him by the Constitution of the United States and of Illinois have been violated, in that his private books and papers have been *seized* and taken possession of by the state's attorney without his consent, and that he has thus been compelled to be a witness against himself."

The affidavit of Gammonly is in substance as follows:

That affiant had been in Bain's employ, as his personal bookkeeper, for about 18 years, and as such had kept the records of all of his business transactions; that among the books and records are certain journals, cash books, ledgers, canceled ledger sheets, scratch books, check books, check stub books, etc. (describing them); that about November 9, 1931, in response to a subpoena *duces tecum,* he appeared before Judge Feinberg and produced some of the books, and at a later date produced, under the court's direction, other books and gave certain testimony; that about November 18, 1931, under the court's direction, he delivered all books into the custody of said judge's clerk, and received a receipt therefor signed "by an assistant secretary of the Straus National Bank & Trust Co., receiver for John Bain, Inc."; and that during March, 1932, he discovered that all of the books and records, were in the possession of assistant State's attorney, Raber, "in an office at 1538 West 63rd street, Chicago."

In the answer and counter affidavit of Raber he stated in substance:

That prior to November 6, 1931, Gammonly maintained an office separate and apart from John Bain, in which office he, and not Bain, had possession of the books, etc.; that Bain, without any order of the circuit court and of his own free will, requested Gammonly to produce the books, etc., in Judge Feinberg's court to be used in the cause there pending; that Gam-

monly produced them according to Bain's request; that after they had been in Judge Feinberg's court for about two days, Gammonly was served with a subpoena to produce them in a *Federal court;* that Gammonly advised Bain of the subpoena being served and Bain told him ''to produce the books in accordance with the subpoena and to co-operate in all matters pertaining to any investigation of the same''; that when the books were in Judge Feinberg's court, witnesses were there examined, and ''finally the books, at the court's direction, were left with the clerk of that court and thereafter turned over by him to the auditor of the receiver for examination''; that ''during all of said proceedings, John Bain was represented in court by counsel and neither he nor his counsel ever raised any objection whatsoever to any acts or doings or orders pertaining to such books''; that the books, etc., were examined for the receiver by one Oppenheimer; that affiant requested Oppenheimer to permit auditors for the State to examine them, which permission was granted; that on account of the inconvenience of having the examination made in Oppenheimer's office, ''Oppenheimer permitted the auditors of the State to take the books from his office upon a receipt, promising to return the same to him, and that said auditors now have possession of the books by virtue of such receipt''; that Bain and the other defendants herein ''have had permission to examine the books separate and apart from all employees of the State, and have had the same access to the books as the auditors of the State have had, except that the defendants herein were not permitted to take them from the premises where they were being held by the State, and for the reason that the State is bound to return them to said Oppenheimer''; that ''about January 30, 1932, John Bain assigned and delivered to the Chicago City Bank & Trust Co., for the benefit of his creditors, all of his

personal assets, real, personal and mixed and whereso-
ever situated, including all legal and equitable property
of any and every nature and by him held''; and that
the books mentioned ''were the property of said Bain
and were a part of his assets in connection with the
matters in said books set forth.''

On the hearing of the motion to suppress, Gammonly
testified that early in November, 1931, in compliance
with telephone calls received from Robert A. Bain and
Edward C. Barry that John Bain wanted his personal
books taken to Judge Feinberg's court room, he (the
witness) took the books to that place; that he had also
received a subpoena from the ''Federal Government
Internal Revenue Department'' to produce the books;
that on November 9, 1931, he saw John Bain and in-
formed him of the subpoena, and Bain told him ''to
take care of both subpoenas, and to co-operate, and
bring in all the books and records''; that prior to tak-
ing the books to Judge Feinberg's court room they
were in his (the witness') possession ''at *his* office at
No. 1538 West 63rd street, Chicago,'' which office
''John Bain had nothing to do with''; that he (the
witness) had had the books in his possession for about
four years; and that after the Bain banks were closed
in June, 1931, he continued to retain the possession of
the books, although his active duties as Bain's book-
keeper, and his salary therefor, had ceased upon the
closing of the banks. Edward C. Barry testified that
early in November, 1931, John Bain instructed him to
tell Gammonly to bring his (Bain's) books to Judge
Feinberg's court room.

Counsel for defendants have assigned on the record
101 errors, but in the stated points in their original
brief 20 grounds for reversal are set forth. And in
none of these grounds is it urged that the finding of
the trial court (that the defendants are guilty as
charged in counts 1 to 26, inclusive, and in counts 51

to 73, inclusive) is against the manifest weight of the evidence, or that defendants were not proven guilty beyond a reasonable doubt. In their printed argument, however, in addition to urging said grounds for reversal, they argue that the evidence does not sufficiently show that defendants were guilty beyond a reasonable doubt of any of the charges, and they make the statement, many times repeated, that the judgment should be reversed as to all defendants because they were "the victims of the recent depression." The 20 grounds, boiled down (including the point made in counsels' printed argument), amount to six contentions in substance as follows:

1. That the court erred in refusing defendants' motion to quash the indictment.

2. That in view of the indictment containing so many counts, the failure of the court to require an "adequate and fair" bill of particulars constituted error.

3. That the court erred in failing to limit the State in its proof as to the transactions disclosed from the bill of particulars filed.

4. That the court erred in denying defendants' motion to supress certain documentary evidence, obtained by the State's attorney by an "unlawful seizure" of John Bain's private books and records without his consent, in violation of his constitutional rights.

5. That to support the court's general finding of guilty on all the counts in question it was "legally necessary that *all* defendants be proven to have been in the *same* conspiracy," which was not proven.

6. That the evidence does not sufficiently show that defendants are guilty beyond a reasonable doubt of any of the charges contained in the counts.

In this opinion we shall only consider the six contentions, as, under well settled rules, any assignments of error that are not supported by argument may be

considered as waived. (*People v. Cobb,* 343 Ill. 78, 83; *People v. Kozel,* 303 Ill. 112, 114.)

As to the first contention (error of court in refusing defendants' motion to quash the indictment) counsels' argument in their brief is in substance that the indictment shows on its face that there was "a misjoinder of offenses in the several counts"; that the rule is, that where "two or more *distinct felonies* are charged in the same indictment," it may be quashed upon motion, or the prosecutor be compelled to elect upon which charge he will proceed (citing *Kotter v. People,* 150 Ill. 441, 445); that the "rule is the same in *misdemeanor cases* where the charges are not founded on the same facts or form or are a part of a series of offenses of the same or similar character or are not based on the same transaction"; that the indictment "contained three different groups of charges which did not grow out of the same transactions, and which were not founded on the same facts or formed a part of a series of offenses of the same or similar character"; that the "methods of the prosecution were unfair," *in that* defendants "were grievously prejudiced" by the fact that the prosecution was "upon an indictment containing 73 counts, covering 14 banks and many firms and corporations, and alleging false pretenses in all counts without setting out those false pretenses in either the indictment or bill of particulars," and "neither defendants nor their counsel could prepare to meet such voluminous, general and omnibus charges, nor could the court properly rule upon the evidence"; and that, hence, the court erred in not quashing the indictment upon defendants' motion. We find no substantial merit in the contention or argument. Each count of the indictment charged defendant with the offense of *conspiracy,* either in violation of the statute (sec. 46 of our Criminal Code, Cahill's St. ch. 38, ¶ 116) or at common law. It is illegal at common law to obtain

money or property or to cheat and defraud, by means of false pretenses (*People v. Smith,* 239 Ill. 91, 103). Even if it could be said that the various counts charged separate and distinct misdemeanors, yet we regard them as of the same character or grade. Although *separate felonies,* as urged by counsel, may not be included in different counts of the same indictment, the same offense may be stated in different ways in as many different counts as the pleader may think necessary, provided that all the counts relate to the same transaction. (*People v. Rasmussen,* 328 Ill. 332, 333; *Lyons v. People,* 68 Ill. 271, 275.) And the rule as to misdemeanors is broader. In *People v. Elliott,* 272 Ill. 592, 600, it is said: ''The State may join misdemeanors of the same character in the same indictment, and the court may fix separate punishment upon each count on which there is a conviction. . . . This practice has been approved by this court rather than to require separate indictments for each offense.'' (See, also, *People v. Allen,* 352 Ill. 262, 267; *People v. Munday,* 204 Ill. App. 24, 32, affirmed as to the particular point in 280 Ill. 32, 51.) In the *Munday* case, the indictment for conspiracy, consisting of numerous counts, was similar to the present indictment, and the court decided against a similar contention made by the convicted defendant. In *People v. Jacobson,* 247 Ill. 394, 398, it is said: ''In the case of misdemeanors the joinder of several offenses of the same character will not, in general, vitiate in any stage of the prosecution. In such cases the practice of quashing the indictment or information or calling on the prosecution to elect on which charge he will proceed does not exist.'' In *People v. Montgares,* 347 Ill. 562, 567, it is said: ''In an indictment charging misdemeanors, separate and distinct offenses of the same nature may be charged in the same indictment under various counts. The offenses as charged may be tried in the same case.''

Furthermore, it is clear to us, under repeated decisions of our Supreme Court, that counts 1 to 14, inclusive (comprising Group 1) are not obnoxious to a motion to quash. (*People v. Smith,* 239 Ill. 91, 103, 106.) And in an indictment charging a conspiracy to obtain money by false pretenses with intent to cheat and defraud, it is not necessary that the false pretenses be set forth. (*People v. Smith, supra; Johnson v. People,* 22 Ill. 314, 316, 317; *Chicago, W. & V. Coal Co. v. People,* 214 Ill. 421, 440; *People v. Nall,* 242 Ill. 284, 292.) And where a defendant is convicted upon a general finding or verdict of guilty under an indictment containing numerous counts, one or more of which is good, the conviction will not be set aside because other counts may be considered to be defective. (*People v. Smith,* 239 Ill. 91, 107; *Ochs v. People,* 124 Ill. 399, 414; *Thomas v. People,* 113 Ill. 531, 535, 536.) And it is difficult for us to perceive the force of counsels' argument, that because of the large number of counts, etc., defendants were hampered in preparing their defense, when consideration is given to the charges contained in the counts, the bill of particulars filed, and defendants' general knowledge of the business affairs of the 12 Bain banks, of which John Bain was the directing head, as shown by the evidence. These banks had more or less been operated as a unit prior to their closing on June 9, 1931, and the conspiracies charged in the counts arose out of their operation. And the evidence shows that defendants for many years had conspired and acted together in selling to various persons and the public generally real estate securities, by means of circulars and printed statements which to their knowledge contained false representations as to the value of the properties.

Defendants' counsel in their original brief further argue that in each of counts 51 to 62, inclusive (Group 2), two or more "distinct offenses" are charged in the

*same* count, and that, hence, those counts are bad for duplicity and should have been quashed. In our opinion the point is without merit. As we read the counts, each alleges, in connection with the particular named bank, *one* conspiracy to effect *two* unlawful objects. And, as we understand the rule, this is proper pleading. (*United States v. Aczel,* 219 Fed. 917, 933; *Frohwerk v. United States,* 249 U. S. 204, 209; *Noyes v. State,* 41 N. J. L. 418, 421; *State v. Kennedy,* 63 Iowa 197, 200.) In the *Aczel* case it is said: "Is this first count bad for duplicity? It charges a single conspiracy or combination to commit several crimes. · This does not make the count multifarious or bad for duplicity." In the *Frohwerk* case it is said: "Countenance we believe has been given by some courts to the notion that a single count in an indictment for conspiracy to commit two offenses is bad for duplicity. This court has given it none. . . . The *conspiracy* is the crime, and that is *one,* however diverse its objects."

During the oral argument, and in the memoranda of additional suggestions then presented, defendants' counsel took the position, in urging error on the part of the trial court in denying the motion to quash the indictment, that the offenses charged in the indictment were *felonies* rather than misdemeanors, and that the above mentioned rule as to *felonies* should have been applied by the court in passing upon the motion. They state in said memoranda in substance:

That "the three groups of charges involved in the 73 counts of the indictment are *distinct* offenses, and *felonies* and *not* misdemeanors, and, therefore, cannot . . . be charged in the same indictment, and the indictment . . . should have been quashed"; that our Illinois statute defines a felony as "an offense punishable with death or by imprisonment in the penitentiary," and that "every other offense is a misdemeanor"; that in *Lamkin v. People,* 94 Ill. 501, 504, in

speaking of our statute, it is said: "It will be noted 'a felony is an offense *punishable*,' that is, absolutely punishable, not that *may or may not be* 'punishable with death or by imprisonment in the penitentiary,' while the offense of which plaintiffs in error are indicted and convicted here shall be punishable by imprisonment in the penitentiary *or by fine*. Surely it is no more accurate, in view of this language, to say this offense is punishable by imprisonment in the penitentiary than to say it is punishable by fine, and it is impossible to say, under any rule of construction, that we are bound to lay more stress on the language fixing the punishment by confinement in the penitentiary than on that fixing the punishment by fine." And counsel further state that although this construction of the statute, as made in the *Lamkin* case, has been followed in many subsequent decisions in this State, yet such construction has not been *discussed* in any subsequent case *upon its merits;* that said construction "was a mistake," *in that* "it has allowed the People to indict for many serious crimes in one indictment, overwhelming the defendant by an unfair prosecution"; that the *Lamkin* case "was *wrongly decided,* because it misinterprets the English language"; that the word "punishable" has been otherwise defined by lexicographers, and similar statutes in many other jurisdictions have otherwise been construed (cases referred to); and that "the *judicial legislation* attempted by the court in the *Lamkin* case *ought not to be longer followed,* and defendants oppressed with the type of prosecutions (like the present one) that have become common in the use of the conspiracy charge."

In our opinion the above position, so taken by counsel, is without merit. Whatever may have been the construction of statutes similar to ours in other jurisdictions, the clear construction of our statute, as made in the *Lamkin* case, *supra,* has been repeatedly

followed in many subsequent decisions of our Supreme Court and is now the unquestioned law in this State. (See *Baits v. People,* 123 Ill. 428, 429; *Herman v. People,* 131 Ill. 594, 597; *Paulsen v. People,* 195 Ill. 507, 514; *People v. Stavrakas,* 335 Ill. 570, 582; *People v. Siemen,* 351 Ill. 433, 434; *People v. Mangano,* 354 Ill. 329, 341.)

As to counsels' second contention (that the court erred in failing to require the State to file an "adequate and fair" bill of particulars), it is a sufficient answer to say that the record discloses that the State did file a bill of particulars (above set forth), and that neither the abstract nor the bill of exceptions discloses that defendants before the trial made any objections to said bill of particulars, or moved that an additional or more specific one be filed. In *People v. Rogers,* 324 Ill. 224, 229, it is said:

"Plaintiff in error's second contention is, that the court should have required the State to furnish a more specific bill of particulars concerning the offense charged. As we have seen, the motion filed by plaintiff in error for that purpose was allowed and a bill of particulars was filed. If he was not sufficiently informed by it he was at liberty to demand a more specific bill of particulars. (*People v. Depew,* 237 Ill. 574, 578.) He did not, however, make such motion but went to trial on the bill of particulars furnished, and cannot now complain."

As to counsels' third contention (that the court erred in failing to limit the State in its proof as to the transactions disclosed from the bill of particulars filed), we do not find that counsel has pointed out any evidence that the court admitted over objection made on this particular ground. If evidence was admitted that is outside the field of the bill of particulars it should have specifically been referred to. It is not our duty to explore the record to ascertain what particular evi-

dence counsel may have in mind. Furthermore, as the case was tried without a jury, it is to be presumed, if any such improper or incompetent evidence was admitted, that the court disregarded the same in reaching his findings.

As to counsels' fourth contention (error of the court in denying defendants' motion to suppress certain documentary evidence obtained by the "unlawful seizure" of John Bain's private books and records, etc.), we do not think that it is supported by the affidavit and testimony presented on the hearing of the motion. We fail to find that any "unlawful seizure" of the books and records was had. It appears rather that they were voluntarily produced in the circuit court, under Bain's orders, and that while they were in possession of that court, or of the Straus National Bank & Trust Co., as the court's receiver of John Bain, Inc., the State's attorney was allowed to and did examine them. Defendants' counsel argue in substance that there was a violation of sections 6 and 10 of Article II of the Illinois Constitution, in that there was an "unlawful seizure" of the books, etc., and that Bain was "compelled to give evidence against himself." We find no merit in the argument. It is the law of this State that if books, documents, papers or other property, belonging to and in the possession of a party who is a defendant in a criminal cause be taken by an *unlawful search and seizure,* such books, etc., may not be introduced in evidence against said party upon the trial of said cause, and that prior to the trial a motion to suppress this evidence so obtained should be granted. (*People v. Brocamp,* 307 Ill. 448, 453, 454; *People v. Castree,* 311 Ill. 392, 397; *People v. Winn,* 324 Ill. 428, 441; *People v. Brooks,* 340 Ill. 74, 76.) But in *Gindrat v. People,* 138 Ill. 103, 111, it is said (italics ours): "Courts, in the administration of the criminal law, are not accustomed to be over-sensitive in regard

to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent *and not subversive of some constitutional or legal right.''* And in *People v. Paisley,* 288 Ill. 310, where the facts pertaining to the point under discussion were similar to those in the present case, it is said (p. 314, italics ours) : ''The court properly permitted the books of all three of the defendants' banks to be used in evidence, . . . These books *were secured by the State's attorney's office from the receiver in bankruptcy, who had gotten them from defendants' receiver appointed on their bill.* Consequently section 10 of article 2 of our constitution, providing 'no person shall be compelled in any criminal case to give evidence against himself,' was not violated. . . . Defendants were not compelled by the court to produce books or papers in *their possession.* . . . Even papers and documents illegally seized from a defendant's possession are admissible in evidence against him in a criminal case if otherwise competent. Courts will not take notice of how they were obtained. . . . Other States having similar constitutional provisions have made similar holdings upon the question now before us.'' (Citing cases.) Furthermore, it sufficiently appears that when the books, etc., in question, were examined by the State's attorney, John Bain had parted with his possession of them and did not have title to them. (*People v. Bransfield,* 289 Ill. 72, 77, 78; *Matter of Harris, Bankrupt,* 221 U. S. 274, 279.) Furthermore, it was no concern of John Bain how the State's attorney temporarily secured possession of the books, etc., from the receiver of John Bain, Inc., or from any person other than himself, because a defendant may only complain of the violation of his own constitutional rights, and not in respect to the manner in which the books, etc., were obtained by the State's attorney from a person not a defendant. (*Guckenheimer & Bros. Co.*

*v. United States,* 3 F. (2d) 786, 789; *Remus v. United States,* 291 Fed. 501, 511; *Burdeau v. McDowell,* 256 U. S. 465, 476.)

As to counsels' fifth contention (that to support the court's general finding of guilty on all the counts in question it was legally necessary that *all* defendants be proven to have been in the *same* conspiracy, which was not proven), it is difficult for us to understand just what is meant. If counsel means that it was not proven that *all* defendants were officers of the *same* banks and that, hence, a defendant not an officer would be legally incapable of unlawfully conspiring with respect to the affairs of the particular bank, we are of the opinion that there is no substantial merit in the contention. As we view the evidence it sufficiently appears that all the defendants were either directly involved in the unlawful conspiracies as charged in said counts, or aided or abetted in their consummation. Counsels' contention is somewhat like the one made by the convicted defendants in the *Ochs* case, 124 Ill. 399, mentioned at page 421, which, for reasons thereafter stated in the opinion in that case, was decided adversely to them. And we think that the holdings in the *Ochs* case are a sufficient answer to counsels' present contention. (See, also, *McCracken v. People,* 209 Ill. 215, 221.)

Before discussing defendants' counsels' sixth contention (that the evidence does not sufficiently show that defendants are guilty beyond a reasonable doubt of any of the charges contained in the counts), we shall consider the written motion of the State's attorney (supported by suggestions and affidavits) to strike from the record the original bill of exceptions, which motion was reserved to the hearing after counter suggestions and counter affidavits had been filed. The main ground for the motion was that no agreement or stipulation had in fact been made between counsel for

the respective parties to so incorporate the original bill of exceptions in the transcript. An examination of the trial judge's certificates to the transcript, duly signed by him on March 15, 1933, discloses, however, the statement that "the parties hereto *have agreed and stipulated* that the original bill of exceptions may be incorporated in the transcript of the record in lieu of a copy thereof." It thus appears that the judge was of the opinion that such an agreement or stipulation had been made and he so certified. In *West Chicago Park Com'rs v. Boal,* 228 Ill. 589, 590, it is said: "We are without facilities in this court, in a case brought here by appeal or writ of error, to determine an issue of fact of this character, and we are satisfied it was not the purpose of the legislature to charge us with that duty." In the present case we shall be governed by the court's finding, as certified to, that the agreement and stipulation had been made by the parties. And the said motion, previously reserved to the hearing, is now denied.

Counsel for the State contend that the *abstract* of record, filed by defendants, "does not contain all the evidence" and, hence, the question of their guilt or innocence is not properly before us. Counsel argue that it is not stated in the abstract that it contains all the evidence; that the abstract is defendants' pleading (citing *People v. Ambolo,* 343 Ill. 480, 483); that "where matters have been introduced in evidence and do not appear in the abstract the court will assume that such matters are sufficient to justify the judgment, and this notwithstanding the fact that the record may be certified to contain all the evidence." (Citing *People v. Ambolo, supra; People v. Miller,* 352 Ill. 537, 540; *People v. Yuskauskas,* 268 Ill. 328, 329); that the State introduced about 3,000 documents or writings, of which there is no index, and some of them are not even mentioned in the abstract; and that some of the testi-

mony of the various witnesses is not abstracted at all. In view of the holdings in the cases cited, and in other cases decided by our Supreme Court, there is much force in counsels' contention. And a comparison of the abstract with parts of the record itself, discloses that counsels' argument as to the insufficiency and incompleteness of the abstract is meritorious. Much of the testimony of the State's witness, Cutmor, a real estate appraiser, does not appear in the abstract, and about 30 of his appraisal reports of the values of various real estate properties financed by John Bain and his associates are omitted. This testimony and said reports were material to some of the issues of fact involved, when taken in connection with other admitted evidence. Some of the material testimony of other of the State's witnesses is also omitted. And some of the material testimony and admissions, given and made by the defendants, John H. Bain and John Bain, as well as by other of defendants' witnesses, are either omitted from the abstract or are not fully abstracted.

However, we have read and considered the oral and documentary evidence as set forth in the abstract, have in numerous instances referred to the record itself and have read and considered the statements and arguments of opposing counsel, contained in the brief of the State's counsel and in the *reply* brief of defendants' counsel as to the purport and effect of the admitted evidence. No useful purpose will be served in detailing the evidence or discussing counsels' arguments. Suffice it to say that, after careful consideration of the evidence and those arguments, we are satisfied that the court's findings of guilty, as to all four defendants, of the charges made in all counts now in the case, are clearly sustained by the evidence, and that the court did not err in entering the respective judgments of conviction above mentioned. And we

are of the opinion that from the entire evidence there can be no reasonable doubt of the guilt of all of the defendants. The case was carefully tried by an able and experienced judge, sitting in place of a jury by agreement of the parties. And in *People v. Thompson,* 321 Ill. 594, 600, it is said: ''A court of review will not reverse a judgment of conviction in a criminal case unless satisfied that there is a reasonable doubt of defendant's guilt. . . . A judgment of conviction . . . will only be reversed where the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt.''

The respective judgments of conviction rendered against the defendants should be affirmed, and it is so ordered.

*Affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.