TERRITORY, respondent, v. CORBETT, appellant.

CRIMINAL LAW—*jurisdiction of grand jury.* The district courts have jurisdiction of every crime known to our laws. 2 Mont. 531. The jurisdiction of the grand jury is co-extensive. Crim. Pr. Act, § 143.

CONSTRUCTION OF STATUTE—*fornication—variance in language—surplusage.* Section 146 of the Criminal Laws, under which the indictment in this case was drawn, creates no specific crime of fornication nor does it cover the case of living in a state of open fornication, which was constituted a crime by the first legislature of Montana, but it covers any act of sexual intercourse between persons related within certain prohibited degrees.

A public offense need not be charged in the exact words of the statute; the meaning must be preserved. Crim. Pr. Act, § 169.

It is sufficient if the statute offense is covered by a part of the charge — the rest may be rejected as surplusage.

MARRIAGES —*prohibited — incestuous.* Marriages between parties prohibited by law from inter-marrying are necessarily incestuous and void. Any act of sexual intercourse between parties so related is within the terms of the law describing it as fornication or adultery.

WITNESSES — *accomplice.* An accomplice is a competent witness in this Territory. Codified Statutes, 271, § 14. Neither the consent of the partner in crime nor permission of court is necessary. Neither is it necessary that the charge against the accomplice be first dismissed.

ARGUMENTS OF COUNSEL. It is discretionary with the court to hear argument of counsel. If satisfied it is not error to decline to hear it.

INSTRUCTIONS. It is not error in a court to refuse instructions that do not state correctly the law of the case, or that have already been covered by instructions given.

EVIDENCE — *accomplice — corroboration.* The testimony of an accomplice need not be corroborated on every item. Failure of this is not ground for a new trial.

CONFIDENTIAL COMMUNICATIONS —*physicians.* The consent of the patient only is necessary to render competent the testimony of physicians touching matters of information acquired in attending such patient in his professional capacity and which were necessary for them to know to enable them to prescribe or act for the patient. Codified Statutes, 125, § 450. In the present case the communications do not come within the specified exemptions and no consent was necessary.

WITNESSES — *names indorsed on indictment.* Our statutes do not require that the names of all the witnesses for the Territory should be indorsed on the indictment. Codified Statutes, 214, § 157.

MOTIONS FOR NEW TRIAL AND IN ARREST OF JUDGMENT. The motion for a new trial should be made before judgment is entered, but the hearing thereon may occur afterward. That in arrest of judgment must be made and heard before judgment is entered. If made afterward the court may, without error, disregard or overrule it.

*Appeal from First District, Madison County.*

THIS cause was tried in the court below by BLAKE, J.

J. E. CALLAWAY, for appellant.

The demurrer to the indictment was improperly overruled. Neither the court nor grand jury had jurisdiction of the offense charged. The offense charged is nowhere made a crime by our laws. There is no such crime as *fornication* recognized, defined or provided with penalty under the statutes of Montana. The law making it a crime for a man and woman to live together in an open state of fornication, passed by the first legislature of the Territory, was omitted from the Codified Laws of 1872.

No case is to be brought within the statute by construction. Bishop on Stat. Crimes, § 220.

There is no law of the Territory declaring any marriage of parties, however related, incestuous and void.

The court erred in denying a change of venue. The court should exercise a reasonable discretion. *People* v. *Mahoney*, 18 Cal. 188.

The court erred in admitting testimony of the accomplice, and further in refusing to hear argument of counsel thereon.

The court erred in giving instructions No. 1, 2, 3, and in refusing instruction No. 7.

The motion for a new trial was improperly overruled; the evidence under our laws was not sufficient to justify the verdict.

The failure to prove defendant was unmarried was fatal. *Territory* v. *Whitcomb*, 1 Mont. 362.

The admission of testimony of Smith and Yager was error. It did not corroborate that of the accomplice. It is ground for new trial where defendant is found guilty on the uncorroborated testimony of an accomplice. *Ray* v. *The State*, 1 Green (Iowa), 316; *People* v. *McElvain*, 39 Cal. 654; *People* v. *Ames*, 39 id. 403; *People* v. *Joslyn*, id. 392.

It was error to admit testimony of witnesses not indorsed on the indictment. *Smith* v. *State*, 4 Green (Iowa), 189.

The court erred in rendering judgment while a motion for a new trial was pending. Also for refusing to hear motion in arrest of judgment.

J. G. SPRATT, district attorney, for respondent.

The sufficiency of the indictment in this case is to be tried by the construction of section 146, page 303 of the Codified Statutes of Montana, under which it was drawn, and also of section 2, page 520, of the same statutes, prohibiting marriages between parties nearer of kin than second cousins. Intermarriage of such parties is void. Sedgwick on Stat. and Const. Law, 84–89.

Sexual intercourse between parties so related is incestuous. Bouvier's Law Dictionary.

A witness may waive her right to refuse to testify when such testimony would criminate herself. No third person can object. *Southard* v. *Buford,* 6 Cowen, 254 ; Starkie on Ev. 41 and note at bottom.

Privileged communications become competent testimony with consent of the patient. Defendant was not the patient and had nothing to say. *Johnson* v. *Johnson,* 14 Wend. 637 ; 1st Greenleaf on Ev., § 249.

Consultation with physicians about procuring abortions are not privileged communications under our statute. Codified Statutes, 125, § 450; *Hewett* v. *Prince,* 21 Wend. 79.

KNOWLES, J.    This defendant was indicted by the grand jury of Madison county, for a violation of the provisions of section 146 of the Criminal Laws of this Territory. The section is as follows :

" Persons being within the degrees of consanguinity, within which marriages are declared to be incestuous and void, who shall inter-marry with each other, or who shall commit fornication or adultery with each other, shall, on conviction, be punished by imprisonment in the Territorial prison not less than one, nor exceeding ten years."

I will consider the points presented in this case somewhat in the order in which they are presented in appellant's brief.

It is claimed that the grand jury which found the indictment had no jurisdiction to inquire into the offense charged. According to section 6 of the Criminal Practice Act the district court has jurisdiction of all offenses which subject the offender to imprisonment in the Territorial prison. An offender in such a case as this would be subject to imprisonment in the Territorial prison. It was held by the court in the case of *Territory* v. *Flowers*, 2 Mont. 531, that the district courts in the respective counties when they convene, had jurisdiction of every crime known to our laws. It is evident, from a consideration of the general scope of the Criminal Practice Act, that a grand jury is one of the means provided the district court for inquiring into public offenses, and that its jurisdiction in that particular is co-extensive with that of the district court in which it is impaneled.

Section 143 of the Criminal Practice Act undoubtedly settles this question. It provides that " the grand jury has power, and it is their duty to inquire into all public offenses committed or triable within the jurisdiction of this court, and to present them to the court by indictment." There is then no validity in this first objection to the indictment.

The second ground of objection to the indictment is that the facts stated do not constitute a public offense. Under this head it is urged that the indictment charges that the defendant committed " the crime of fornication," when there is no such crime known to our laws. It is true that our criminal statutes do not specify any acts that shall constitute the crime of fornication, and there never was any such crime known to our laws. The criminal laws enacted by the first legislative assembly of the Territory provided a punishment for persons living in an open state of fornication.

The indictment under consideration was evidently drawn to meet the provisions of section 146 of our Criminal Laws, and under that section all the other facts appearing, only one single act of fornication would be sufficient to constitute the crime therein specified. Hence, although that law of the first legislative assembly may be in force now, it could not meet a case where there was but a single act of fornication, for living in an open state of

fornication is a different offense from fornication.   The fact that
the indictment calls fornication a crime would not probably
vitiate it.   The words " crime of " may perhaps be considered
surplusage.   Quite a number of cases are cited in Bishop on
Crim.   Proc., § 481 and note 4, where words in indictments
have been regarded as surplusage when it is not so apparent that
they are such, as in this indictment.   It is not necessary, how-
ever, that we should rest our decision upon this point upon the
construction of that clause in the indictment.

The indictment, after setting forth all the other necessary facts,
contains this language :   " Did commit the crime of fornication
with the said Sarah Parker, and then and there had carnal and
sexual intercourse with the said Sarah Parker."

If the language, " then and there had carnal and sexual inter-
course," is equivalent to the term, " fornication," used in the
statute, then the indictment is sufficient in its allegations upon
this point without the words, " crime of fornication."

Section 169 of our Criminal Practice Act provides :   " Words
used in the statute to define a public offense need not be strictly
pursued, but other words conveying the same meaning may be
used."

Webster's Dictionary defines fornication to be " the inconti-
nence or lewdness of an unmarried person, male or female."
Bouvier's Law Dictionary defines it as, " The unlawful carnal
knowledge of an unmarried person with another, whether the
latter be married or unmarried."   The first count in the indict-
ment charges that the defendant is unmarried.   There cannot be
any doubt but the words, " carnal and sexual intercourse," have a
meaning equivalent to the words used by the above works in
defining fornication.

The clause in the indictment, " did commit the crime of forni-
cation," then may be surely treated as surplusage.   " No indict-
ment shall be quashed or set aside for any surplusage when there
is sufficient matter alleged to indicate the crime and person
charged."   Codified Statutes, § 171, p. 217.

The next objection to the indictment is in effect an objection
to the statute under which it is drawn.   It is insisted that the

laws of this Territory do not declare any marriage incestuous and' void, and without some law of this import this statute is a nullity.

We have a statute that reads as follows : " No marriage shall be contracted while either of the parties shall have a husband or wife living, nor between parties who are nearer of kin than second cousins, computing by the rules of the civil law, whether by the half or whole blood." Marriage under our laws is treated as a civil contract. The general rule is that when any contract is entered into which is prohibited by a statute it is void, and it is not necessary that the statute should in express terms declare it void. The prohibition of such a contract in effect declares it void. Sedgwick on Stat. and Const. Law, 84 ; 2 Pars. on Cont. 746.

The effect of the above statute then is to declare void any marriage between the defendant and Sarah Parker, because it appears that the defendant is her half-brother. It is said, however, that the marriages prohibited between kin in this statute are not declared incestuous. What marriages are incestuous ? " When the parties to an act or series of acts of unlawful carnal intercourse are related to each other within the degrees of consanguinity or affinity wherein marriage is prohibited by law, their offense is called incest." Bishop on Stat. Crimes, § 727. To the same effect will be found the definition given in Bouvier's and Burrill's Law Dictionary. The word " incestuous " is an adjective and qualifies a noun, whether it stands for a person or thing, and attaches to it the character of incest. An incestuous person is one guilty of incest. An incestuous cohabitation or sexual intercourse is a cohabitation or sexual intercourse between persons related within the degrees of consanguinity within which marriage is prohibited. So the term " incestuous " is a proper term to apply to a marriage which is contracted between parties related to each other in the degrees within which such contracts are prohibited by law. In 2 Kent's Com., marginal pages 83–4, the phrase " incestuous marriage " is used in treating of marriages contracted by parties related to each other within certain degrees of consanguinity. See, also, *Commonwealth* v. *Lake*, 113

Mass. 458. When a statute declares such a marriage void or prohibits the same, it is incestuous. To hold otherwise would be as absurd as it would be to hold that because the statute did not in express words declare any acts criminal, that therefore no acts were criminal. There was no error then in overruling the demurrer.

It is urged that the court erred in not awarding the defendant a change of venue. The application for this was supported by the affidavits of Kirkwood, one of the attorneys for the defendant, and of the defendant himself. The affidavit of Kirkwood is particular in regard to the excitement and prejudice in Virginia City, the county seat of Madison county. An affidavit to this effect is not sufficient. *People* v. *Baker*, 1 Cal. 403. This affidavit further states that "owing to the flaming reports heretofore printed in the newspapers," he finds a deep-rooted prejudice against the defendant in various portions of the county. This does not show that there is a prejudice against the defendant in the whole county or any great portion of it. Perhaps nothing so much militates against the affidavit of Kirkwood, and tends so thoroughly to destroy its force, as the fact that he attributes to public prejudice against his client the searching of himself by the officers in charge of defendant, that they might learn that he was not carrying to his client the means of escape. No such inference can be drawn from that. The defendant asserts in his affidavit that the prejudice created in the minds of the people against him was caused by certain articles published in *The Madisonian*, a newspaper published in Virginia City. With us, the newspaper press is free and every newspaper publishes any facts made public concerning the commission of any crime in the community where it exists, and every other paper in the Territory copies the same. It is not believed that the citizens of any community in this Territory have a pre-eminence over those of another as the readers of newspapers. Nor is it thought that any newspaper in this Territory has much greater influence in the county where it is published than in other portions of the Territory where it circulates. If there is prejudice in one county on account of newspaper articles alone, unaccompanied with any .

other local influence, 1 think it would be difficult to find any other county in the Territory where the same prejudice had not been created. The change must be made to some county, if at all, where the cause complained of does not exist. Codified Statutes, p. 224, § 225. The court is not bound to believe what is improbable. The defendant does not offer to show that in fact the jury was prejudiced against him, or that it acted unfairly, and there seems to have been no great difficulty in procuring an unprejudiced jury. From appellant's brief it appears that not more than thirty-six persons were called before a jury, which satisfied the requirements of the law were found. This was not an unusual number in so important a case. The affidavits did not show that there was any prejudice against defendant save on account of the charge in this case.

It is usually considered a privilege for a person charged with a crime to be tried in the county where he has resided for years, and a change of venue should not be granted to such a person without the most satisfactory showing of prejudice against him. I find no abuse of discretion in refusing this application.

There is no validity in the point that Sarah Parker ought not to have been allowed to testify until the district attorney had complied with the common-law usage of asking the permission of the court to dismiss the charge against her, and the privilege of introducing her. Under our statutes (see Codified Statutes, p. 271, § 14), an accomplice may be called upon to testify against his accomplice whether he gives his consent or not. He is treated as any other witness save that his credibility may be affected by the fact that he is charged with the same offense as the person against whom he testifies.

It is very evident that the above statute does not contemplate that the charge against an accomplice who is called as a witness should be dismissed, or that any permission of the court is required to introduce him.

The defendant complains because the court below would not hear any argument upon the right to introduce this witness. When a court is satisfied upon a point, it is certainly not error to refuse to allow its time to be consumed with an argument

thereon.   This is the first time I have ever  heard  such  a  point having been seriously presented to an appellate court as a ground of error.   The defendant makes objection to several  instructions given by the court on the ground  that  there  is  no  law  in  this territory declaring any marriage incestuous and void, and because there is no such crime as fornication known to the  laws.    These questions have been fully considered in determining  the validity of the indictment, and will not again be reviewed.   There  is  an objection to one of the instructions because the  phrase  " alleged accomplice,'' is used in regard to  the  witness, Sarah  Parker, for the reason that it might mislead the jury.    That is, I suppose, by causing them to think there might be some doubt as to her being an accomplice.   Undoubtedly the reason that the court used such guarded language was because he desired  to  leave  the  question to the jury as to whether or not she was an accomplice.   Had he stated positively as a fact that she was an  accomplice, then infer-entially he would have declared as a fact that the  defendant was guilty.    There certainly can be no  error  in  a  court  using  such guarded language, when such considerations are presented.    The court properly refused  to  give  instruction  number  seven, speci-fied in appellant's brief, for the reason that it  was  not  law.   It was based upon the assumption  that  all  that  was  necessary  to constitute the guilt of the defendant and to make  Sarah  Parker an accomplice was carnal  intercourse  between  them.    It left out of view the further facts the jury were compelled  to  find, that defendant and witness were related within the degrees of consanguinity in which marriage is declared incestuous and void, and knew this fact.   Perhaps no one would have complained more of such an instruction, had it been given, than the  counsel for the defense.   I think also the point sought to be presented by this instruction had been fully covered by other instruc-tions.   It is urged that the court erred in overruling defendant's motion for a new trial for the reason that the witness, Sarah Parker, was not corroborated on some of the material is-sues in the case.   I have examined the testimony presented in the record, and find that she was corroborated on every material issue in the case, save the one of the defendant being an unmar-

ried man, if this can be considered a material issue. As to sexual intercourse she was corroborated by Doctors Yager and Smith. As to the fact of the defendant and witness being half-brother and sister, and that they knew this, by Parker and Yager and a letter of defendants. If the allegation of defendant being un-married was a material one, the defendant would have no right to a new trial, because the witness was not corroborated on this point, for the rule of law is that an accomplice need not be cor-roborated on every item of testimony given by the same. 1 Greenl. on Ev., § 381, and note 1; 1 Phill. on Ev., marg. p. 114. The evidence of Doctors Yager and Smith was properly admitted. The statutes of this Territory provide that a physician shall not testify without the consent of the patient as to any information he may have acquired while attending the same. Codified Stat-utes, p. 125, § 450. Sarah Parker and not John Corbett was the patient, and she gave her consent, and that was sufficient to make them competent witnesses.

Physicians were not exempted at common law from disclosing confidential communications, confided to them in their profes-sional character. Greenl. on Ev., § 247; Phill. on Ev., marg. p. 136. We are therefore confined strictly to the words of the statute in considering this point, and that, we have seen, limits the confidential communications to those made by the patient to the physician in his professional character, and were necessary to enable him to prescribe for the same. The communications made to Doctors Yager and Smith by the defendant do not come within the exemption specified in the statutes. The admission of the evidence of Parker was proper, although his name was not in-dorsed on the back of the indictment. Codified Statutes, p. 214, § 157. The application for a new trial should be made before judgment is entered. Codified Statutes, p. 243, § 354. But there is nothing in the statute that requires that this motion should be heard before judgment, and I think the usual practice of the courts of this Territory has been to hear it afterward. Cer-tainly the defendant would lose no right by such a practice. The motion in arrest of judgment in its very nature, and according to the statutes of the Territory, and the practice at common law

should be made and heard before the entry of judgment. Codified Statutes, p. 243, § 356; Archbold's Crim. Pl. & Pr. 671-2 and note.

From the record it clearly appears that the motion in arrest of judgment was made after the same was entered. The motion was not then made in time. 1 Archbold's Crim. Pl. & Pr. 672; Bishop on Crim. Proc., § 1107.

If the motion was not made in time, there was no error in the court disregarding it or overruling it. It may also be observed that no point was presented in the motion in arrest of judgment that was not presented on the demurrer to the indictment, and considered by that court and this. Hence the defendant was in no manner prejudiced by the action of the court in this matter.

I, have considered many points in this case at considerable length that would not otherwise have been so treated had not the same been presented with much sincerity and earnestness by the counsel for defendant, and had not this been a criminal action in which the liberty of a man was involved. The judgment of the court below is affirmed with costs.

*Judgment affirmed.*