SEARCY RATCLIFF v. THE STATE.

No. 5941. Decided November 3, 1920.

**Theft—Ownership—Possession—Variance—Rule Stated.**

Where, upon trial of theft, the ownership and possession were alleged in W. E. Smith, and the proof showed that the possession was in R. W. Ench, and that the property was under his care, control and management at the time it was taken, such variance was fatal to the conviction. Following Otero v. State, 30 Texas Crim. App., 455, and other cases.

Appeal from the District Court of Bexar. Tried below before the Honorable W. S. Anderson.

Appeal from a conviction of felony theft; penalty, confinement for three years in the penitentiary.

The opinion states the case.
No brief on file for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—
Cited: Graves v. State, 42 S. W. Rep., 300; Parks v. State, 89 id.,
1064; Garling v. State, 2 Texas Crim. App., 44.

MORROW, Judge.—The conviction is for theft, and punishment
fixed at confinement in the penitentiary for three years.

The property is charged to have been taken from the possession of
W. E. Smith, The facts show that Smith was the owner of a whole-
sale store, and that a part of his stock consisted of some cases of
cigarettes. Some of these were stolen by the appellant. Smith had
a number of employees, and managed and controlled the business.
He, however, received an injury on the sixth day of February, and
by it was incapacitated for some six weeks. He was taken immedi-
ately to a sanitarium. He testified:

"I went to the hospital on the sixth day of February, and left R.
W. Ench in charge of my business. He had absolute care and con-
trol of it during the time I was in the hospital. He was at the head
of my affairs. I left him in the management of my business while I
was away. Anything that was in my store was under the control of
Mr. Ench. I regarded him as the head of my business while I was
away. During the time I was in the hospital I called the men in
consultation occasionally, and advised with them, but the actual con-
trol and management was in the hands of Mr. Ench. I looked to him
to perform my duties as well as he could while I was away. He was
the man who had to say whether or not anything should go out of
that business. I would hold him responsible. In other words, if
anything went wrong he was the man responsible for it. I did not
myself exercise any control over the business except what I may have
exercised by occasional conversation and consultation. For the first
few days after the injury I had no consultations, and was not able
to see any one. During that time I was absolutely incapacitated.
From the sixth of February to the sixteenth of February I had
absolutely no control or management of the business. I did not know
what went on there, and could not give or withhold my consent to
anything."

Ench testified that he had been in the employ of Smith for twelve
years as credit man and chief clerk. He said:

"Mr. Smith was hurt on the sixth of February. The first time
after that that I consulted with Mr. Smith was about six or seven
weeks, something like that. I saw him soon, but never told him any-
thing because he was in the hospital, and I didn't want to bother
him. i visited him the next day after the injury, but did not con-
verse with him with reference to the conduct of the business. He

conversed with me with reference to the business possibly a week after that. We had no talk at that time about my taking charge of the business. We were running it like we always did. Prior to the time he was hurt Mr. Smith had control, and when he was not there I managed it in his place. From the time Mr. Smith was injured to the twelfth or thirteenth of February his business was absolutely under my control, with the assistance of the other members of the force. I was the head of the business in his absence. That was the condition without any consultation with Mr. Smith after he was hurt.''

The cigarettes were stolen on the tenth of February while Mr. Smith was in the hospital, and were taken from the store while it was under the control and management of Ench. In an appropriate manner the point was made upon the trial that a variance between the allegation and the proof of ownership was shown. The meaning of our statute on the subject of ownership, and the requisites of pleading and proof thereunder received consideration by the court, and its views were expressed by White, presiding Judge, in the case of Frazier v. State, 18 Texas Crim. App., 442, in the following language:

''With regard to the pleading in theft, it is expressly provided that 'where one person owns the property, and another person has the possession, charge or (and) control of the same, the ownership thereof may be alleged to be in either.' (Code Crim. Proc., art. 426.) It 'may be alleged to be in either,'—that is, it may and in most instances should only be alleged to be in one, and that one should be the one having the actual charge, control and management. It is not in such cases necessary to allege ownership in the actual or general owner; the special owner is the one from whose possession the property is actually taken, and it is only necessary to allege a taking from him, and that it was without his consent. In other words, as the criterion in determining how ownership should be alleged, it should first be ascertained who was in 'the exercise of actual control, care and management,' at the time the property was taken. If the actual owner, then 'the possession' was in him, and should be so alleged, though he may have agents or servants using the property at the time in subordination to his possession. But if the 'actual control, care and management' at the time of the taking is in another, then this other is the special owner in 'possession,' and it is his possession which has been despoiled, and the property should be alleged to be his and taken from his 'posession' and 'without his consent,' without any mention of the actual or general owner—because the property was not 'taken from the latter's possession.' What constitutes the control, care and management of property must depend upon the circumstances of the particular case, in many instances.

''Proof must be made that the property was taken from the possession of the party in whose possession it was alleged to be. If the owner was not in actual possession, but another was, then, if the allegation placed it in the owner and the proof showed it in another

88 Tex.—6

who had the 'actual control, care and management,' then the variance between the proof and the allegation would be fatal, and a conviction could not be had. Let us illustrate the whole matter by actual instances which may occur at any time.''

Similar views were expressed in the opinion of Hurt, Judge, in Bailey's case, 18 Texas Crim. App., 432.

The facts of the instant case bring it clearly within the purview of the decision quoted from. The ownership and possession having been laid in Smith, and the proof developing that the possession was in Ench, and that the property was under his care, control, and management at the time it was taken, a variance resulted which is fatal to the conviction. Otero v. State, 30 Texas Crim. App., 455; Bailey v. State, 20 Texas Crim. App., 76; Hall v. State, 22 Texas Crim. App., 633; White v. State, 33 Texas Crim. Rep., 94; Williams v. State, 42 Texas Crim. Rep., 18.

From what has been said, it follows that a reversal of the judgment is necessary. It is so ordered.

*Reversed and remanded.*