STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* LLOYD H. FAIRBURN, DEFENDANT AND APPELLANT.

No. 9930.

Submitted January 22, 1959. Decided May 1, 1959.

Rehearing Denied June 25, 1959.

340 Pac. (2d) 157.

450

MR. JUSTICES BOTTOMLY and ADAIR dissented.

Ralph L. Herriott, Billings, for appellant.

Forrest H. Anderson, Atty. Gen., William F. Crowley, Asst. Atty. Gen., for respondent. William F. Crowley, argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment of conviction on a jury

verdict. The appellant was convicted of grand larceny of property held by him as an agent under R.C.M. 1947, sec. 94-2701.

The charge arose out of appellant's appropriation to his personal use of $381.60 paid to him by the purchaser of a Comptometer computing machine. The appellant was an agent selling strictly on commission. According to the undisputed testimony of appellant's employer, appellant had authority only to accept orders from customers "and to bring back written proof of those orders and whatever money might have been tendered with the original sale," the amount in this case being the stolen $381.60. The Comptometer computing machine belonged to the Comptometer Corporation. It was shipped from the Spokane branch to the Billings distributor and by him delivered to appellant for demonstration purposes, and sale. The purchaser paid by a check drawn to the order of "General Business Machines" at appellant's request. The appellant neither reported the sale nor paid any of the sale proceeds over to the Comptometer Corporation's home office in Algonquin, Illinois, nor to the Comptometer Corporation branch office in Spokane, Washington, nor to the appellant's immediate employer, Steve Fowler, Comptometer distributor and resale agent in Billings, Montana. Until Fowler discovered the defalcation, the payee of the check drawn to "General Business Machines" was never heard of by Fowler or anyone connected with the Comptometer Corporation home or branch office.

Fowler employed the appellant as a salesman on April 29, 1957. The appellant's duties were to sell office machines on a sixteen percent commission basis, the commissions on these machines to be payable *after sales had been made and confirmed* by the Spokane office. The particular adding machine sale involved in this case was to be so handled according to the State's case. Appellant's working arrangement and Fowler's ownership with the Comptometer Corporation in these sale proceeds is shown by this portion of Fowler's testimony:

"Q. When you say 'strict' commission, do you mean he

[appellant Fairburn] was to be paid commission on sales and only when he made sales—is that right? A. We had that understanding. I was in no position to pay commissions in advance of any sale, but only after such time as the money had come into the office. * * *

"Q. I want to go back to that particular computing machine delivered to the Niagara people. Now, what shares in the proceeds of the sale that machine would the Comptometer Corporation have had? A. * * * the principal share in it.

"Q. Did you have any interest in the proceeds of the sale of that machine? A. Not directly * * * but only through the Comptometer Corporation.

"Q. You received a percentage, I take it? A. Yes.

"Q. So in a sense you did have a share interest in the proceeds * * *? A. I did."

The appellant's employment covered a period of about two months, ending with his arrest on July 5, 1957. During this time twelve office machines were delivered to the appellant in his capacity as agent. Four of the machines were eventually returned to Fowler. No payment was ever received by Fowler for any of the machines.

The record is replete with substantial uncontradicted testimony that, if believed, proved beyond a reasonable doubt the criminal nature of the defendant's act charged. Defendant's counsel brought out on cross-examination of Fowler that the defendant had been submitting fake purported sales, and that as a part of the same transaction involved in the charge, the defendant had given a bad check for a massage unit to the company he sold the adding machine to. All of this evidence demonstrated the criminal intent of the defendant and the criminal nature of the act charged.

The defense was apparently based on showing an open appropriation under a good faith claim of title. The appellant presented evidence to the effect that Fowler was indebted to him for unpaid commissions, that he needed the money, and that he retained the money on that account. The evidence on

this matter is in sharp conflict and the jury elected to believe the testimony of the State's witnesses.

The appellant makes three specifications of error. The first is to the effect that the information does not state facts sufficient to constitute a public offense. The second is made in connection with certain testimony offered by the defense but refused by the court. The third complains of the admission of evidence of transactions involving other machines and proceeds, which is claimed to be prejudicial to the defendant.

The information under which the appellant was convicted ▮ accused him of committing grand larceny "in that * * * Fairburn * * * having in his possession, custody and control as the agent of one Steve Fowler * * * lawful money * * * in the sum of * * * ($381.60), then and there the property of the said Steve Fowler and the Comptometer Corporation of Spokane, Washington, did then and there wrongfully, unlawfully, and feloniously appropriate said money to his own use, with the intent then and there in him, the said Lloyd H. Fairburn, to deprive the true owners of the said property; contrary to form * * *."

Appellant's objections to the information are that the charge of grand larceny is laid in the generic terms of our larceny statute (R.C.M. 1947, sec. 94-2701) without particularity; that agency for one principal, the Comptometer Corporation, is neither alleged nor inferable from the information when read as a whole; and that the exact amount of money owing separately to Fowler and to the Comptometer Corporation is not alleged.

To buttress his contention that particulars are required in support of an information charging grand larceny in generic statutory terms, appellant relies on this court's opinion in State v. Hale, 129 Mont. 449, 291 Pac. (2d) 229. This was a prosecution under R.C.M. 1947, sec. 94-1805, for obtaining money by false pretenses, specifically on a "false and fraudulent claim" relied on by a county in making payment to the

county surveyor. State v. Hale, 126 Mont. 326, 328, 249 Pac. (2d) 495, 496.

On the second appeal in State v. Hale, supra, 129 Mont. 449, 291 Pac. (2d) 229, the majority held that while generally an information couched in the language of the controlling statute is good, not only the particulars in which the Hale claim was false and fraudulent but also the particular representations relied on by Missoula County for making the payment must be averred in the information. The information is set forth at 129 Mont. at pages 467-471, 291 Pac. (2d) at pages 238-240, and was ruled insufficient for the reasons stated above.

The Hale opinion recognizes a general rule of pleading opposed to defendant's position here. Specifically the Hale decision is off point in that it deals not with theft but with deceit, fraud and pretenses. Whereas larceny is a broad and comparatively simple problem based on common law concepts of general application, fraud must be found in the particulars of the mode of the falsity and pretense. See opinion in State v. London, 131 Mont. 410, 428, 310 Pac. (2d) 571, citing State v. Hale, 129 Mont. 449, 291 Pac. (2d) 229; State v. McLean, 129 Mont. 500, 291 Pac. (2d) 250, and State v. Duncan, 130 Mont. 562, 568, 305 Pac. (2d) 761. The London opinion says [131 Mont. 410, 310 Pac. (2d) 581]: ''It is the contention of the appellant that the * * * [Hale and MacLean cases] have changed the previously settled law of this state and that now an information for murder must comply with the rules laid down in these two cases, both of which had to do with the charge of fraud or false pretenses under our statutes.

''That such is not now the law must be apparent.'' We now add that, by parity of reasoning, the rule of the Hale cases is equally not the law in prosecutions for larceny and other common-law crimes of long-established meaning where indictments and informations in statutory form meet the tests laid down below.

In further support of his position appellant also cites State v. Wolf, 56 Mont. 493, 185 Pac. 556, which is an appeal

from a conviction for sedition. The Wolf case follows the general rule that an information framed in statutory terms must be sufficiently particularized to enable a defendant to prepare a defense. Beyond this the opinion is irrelevant. To provide adequate notice to the defendant, a charge of sedition or false pretenses must be particularized. Sedition is what was said, fraud is what was pretended and without being fully informed on these matters the defendant cannot know what he must defend against.

Appellant also cites State v. Mjelde, 29 Mont. 490, 75 Pac. 87, 88, a case involving grand larceny of money received in equal amounts on three separate bailments made simultaneously for an identical purpose. The separate amounts were each less than $50 but the total of all exceeded $50. Appellant contends that the rule of this case requires that the portions belonging to Fowler and the Comptometer Corporation be separately alleged.

But defendant overlooks the portion of that opinion (State v. Mjelde) which reads: ''The particular ownership * * * is not of the essence of the crime. * * * The gist of the offense is the felonious taking * * *. The time and place of the taking and the ownership of the thing taken must be alleged in the information, not to give character to the act of taking * * * but merely by way of description. The fraud is against the owner; but the crime * * * is against the state * * *.''

The Mjelde decision is cited with approval in State v. Grimsley, 96 Mont. 327, at page 330, 30 Pac. (2d) 85, with intervening Montana decisions and in many opinions which follow the Grimsley case. We find no Montana decision sustaining appellant's position that agency must be detailed, and, as between owners, that the amount of money stolen from each must be particularized. To so particularize would not aid the defendant in preparing his defense.

Tested by the rules of criminal code pleading, the information charging defendant with grand larceny is sufficient to state a public offense. Summarized, these rules are: Will

the accused and the court be apprised of the charge? Will the accused be surprised by the evidence? Will a conviction bar another prosecution? This is the intendment of the Montana code rules of criminal pleading, R.C.M. 1947, Title 94, Chapter 64, and of the following statutes as particularly applicable to the information attacked in this appeal: Sections 94-6404, 94-6403, subd. (2), 94-6412, subds. (6) and (7), 94-6413, and 94-6429.

Beginning with Territory v. Corbett, 3 Mont. 50, these rules for sufficiency of criminal indictments and information have been discussed on innumerable appeals. State v. Wong Sun, 114 Mont. 185, at pages 190-192, 133 Pac. (2d) 761; State v. Lake, 99 Mont. 128, at page 136, 43 Pac. (2d) 627, 630, states that "An information which charges the offense of larceny as agent or bailee in the language of the statute [now R.C.M. 1947, sec. 94-2701] is sufficient and is not vulnerable to a general demurrer." In State v. Brown, 38 Mont. 309, at page 313, 99 Pac. 954, 956, quoting from Bishop on Statutory Crime, sec. 422, it is said: " 'The bailment must be averred; but on principle the particulars of it need not be so, because it is a matter of inducement, and so the more general allegation will suffice'." See also State v. Gondeiro, 82 Mont. 530, at page 535 et seq., 268 Pac. 507; State v. Haley, 132 Mont. 366, at page 368, 318 Pac. (2d) 1084, and citations therein; State v. Board, 135 Mont. 139, 337 Pac. (2d) 924. For a discussion of Montana decisions see Chief Justice Adair's dissenting opinion in State v. Hale, 129 Mont. 449, at page 463, 291 Pac. (2d) 229. These decisions have established the law in Montana. They confirm the sufficiency of the information.

The appellant's argument under his second specification of ▮▮ error is that the trial court improperly rejected the offered testimony of a witness, a clergyman, who was prepared to testify to a conversation between himself and Fairburn about a week prior to the offense charged. The court sustained an objection grounded on hearsay when the question was asked and the appellant then made the following offer of proof:

"Comes now the defendant and offers to prove by the witness Jess McGuire that on or about the 12th day of June, 1957, the defendant and the witness had a conversation the substance of which was that the defendant had conversed with Steve Fowler concerning retention of proceeds from sales and that Fowler had agreed. Further, that defendant had stated to the witness that probably retention was the solution of the problem and that as a result thereof the defendant and witness had agreed that this solution was agreeable."

This evidence was offered for the purpose of showing that the defendant took the proceeds of the check in good faith and under claim of right. See section 94-2717, R.C.M. 1947. So far as it tends to prove that the defendant had a rightful claim to the proceeds of the check, it depends on the truthfulness of the defendant in relating to McGuire what he had been told by Fowler. Attempting to prove that Fowler told Fairburn that "retention was the solution of the problem" through proof of Fairburn's statement to McGuire is certainly subject to the hearsay objection and therefore the district court's ruling excluding the evidence was quite proper on this score.

So far as this evidence tends to prove an untenable claim made in good faith (see the language of the statute) establishing a mental attitude in the defendant incompatible with criminal intent, it is at best a self-serving statement made by the defendant and offered through the mouth of a clergyman in order to give it more weight with the jury. It has no real probative value. In order to give weight to the statement in this regard it is necessary to take as true the fact of the conversation between Fowler and Fairburn and the gist of it as stated and to do so we are again asked to rely upon hearsay. Thus the appellant's position is no better as to intent than as to his actual right to the money as previously discussed.

The appellant argues in addition that the *res gestae* exception to the hearsay rule, if applied, will justify admission

458

of this evidence. That rule allows hearsay evidence to be admitted only when it originates under circumstances where reflection and fabrication are unlikely. Platts v. Platts, 134 Mont. 474, 334 Pac. (2d) 722.

"The spontaneity of the utterance and its logical connection with the principal event, coupled with the fact that the utterance was made while the declarant was still subject to the stimulus of the nervous excitement of the principal event, are deemed to preclude contrivance, deliberation, design or fabrication, and to give to the utterance an inherent guaranty of trustworthiness." Jones, Evidence, 5th ed., sec. 319, p. 597.

There is nothing in the circumstances surrounding the ██ making of the statement to McGuire which indicates that the defendant did not have time to reflect, plan, and if it suited his purposes, prevaricate. Therefore the *res gestae* rule does not apply to the statement and since it is hearsay it was properly excluded.

The third specification of error, as drafted by the appellant, ██ reads as follows:

"The Court permitted the witness, Steve Fowler, over objection, to answer questions concerning other transactions to the prejudice of the defendant. The questions are as follows:

" 'Q. Do you know whether any other of these machines were returned to the Comptometer Corporation or any of the parties concerned with the Comptometer Corporation? A. To my knowledge none of these have been returned to any other —any other company.

" 'Q. Did you ever get paid for any of these other machines delivered and not returned by Mr. Fairburn? A. No. I received no money'."

The appellant argues that these questions and answers improperly put before the jury evidence of other crimes and convey the impression to the jurors that the larceny charged was only one of a series of similar crimes. These questions and answers did nothing more than to establish the business relationship between Fowler and Fairburn and fall short of show-

ing any crime connected with the other machines. This line of testimony established that Fairburn was given the machines to use as demonstrators, was to place them on trial in prospective customers' establishments, and was given authority to make sales. It would not be at all unusual that during the short period of time involved here none of the machines had been finally paid for or returned. In short, we do not believe that this evidence tends to show the commission of any other cirmes by the appellant. We think the objections made at the time these questions were asked were probably based less on the questions and answers than on a guilty conscience. Otherwise the same questions and answers might demonstrate good faith on the part of the appellant and lack of criminal intent. We find no merit in this third specification.

We find no error prejudicial to the defendant and the judgment of conviction is affirmed.

MR. JUSTICE ANGSTMAN concurs.

THE HONORABLE LESTER H. LOBLE, District Judge, (specially concurring):

In his dissenting opinion MR. JUSTICE BOTTOMLY objects that the true ownership of the stolen business machine is not shown, whereby he dissents that the information is insufficient to charge a public offense. I do not agree. I concur with MR. JUSTICE CASTLES.

This prosecution is bottomed on the larceny of $381.60, lawful money of the United States of America, then and there the property of Steve Fowler and the Comptometer Corporation of Spokane, Washington. The comptometer for which this money was paid was consigned from the Comptometer Corporation of Spokane, Washington, to this company's distributor, Steve Fowler, in Billings, Montana. It was Steve Fowler's function to sell the machine. When he sold the machine, he was required to return a signed sale order, with any money re-

ceived to this Comptometer Corporation in Spokane, Washington. The sale was there to be processed and the commission due Fowler was to be sent to him. The Comptometer Corporation of Spokane kept the remainder of the money. Remittance arrangement on this kind of machine between branch office in Spokane and home office in Algonquin, Illinois, is not shown.

The defendant Fairburn was employed by the distributor Fowler as his agent and salesman to demonstrate and sell comptometers. Fairburn was required to turn over to Fowler any money by Fairburn received, together with a sale order covering every comptometer as sold.

The allegations of the information as to the true owner were sustained by the proof. In fact, not until the dissenting opinion of MR. JUSTICE BOTTOMLY was the true ownership of the comptometer machine involved in any way or questioned by anyone. There is no specification of error on this ownership. It was not urged on argument in the supreme court, nor is there any evidence in the record to sustain such a contention.

To say that the facts in this case constitute nothing but a civil trespass is startling. Fairburn, knowing full well that as agent he should demonstrate the comptometer, obtain the order and payment and turn the same over to his superior, Steve Fowler, who, in turn, would send it to the Comptometer Corporation of Spokane, Washington, which would remit Fowler's commission to him at Billings, out of which Fowler would then pay Fairburn his sixteen percent (16%) commission, indulged in this criminal conduct, to-wit:

Fairburn, without knowledge of Steve Fowler, in May at Billings, Montana, sold the machine to the Niagara Cyclo Massage Company of Montana for $381.60 and took a check in payment made out to himself under the fictitious name "General Business Machines." Fowler had never heard of this fictitious corporation. This check was dated June 18, 1957. After endorsing the name "General Business Machines," Fair-

burn cashed the check in the Stockmen's Bar in Billings, and pocketed the money. Never did he tell his superior, Fowler, or anyone else connected with the Comptometer Corporation anything about the sale or the money. If that is not permanently depriving the true owner thereof, what state of facts could ever prove a larceny of this character?

I cannot conceive how the charge, as lodged in the information, could in any manner mislead or prejudice an accused, and I concur with MR. JUSTICE CASTLES on ample authority, expanding and repeating only his citation of the case of State v. Mjelde, 1904, 29 Mont. 490, 493, 75 Pac. 87, 88:

"Property must have an owner before it is the subject of larceny, but this statute [Sec. 880, Pen. C. 1895, now R.C.M. 1947, sec. 94-2701] does not define the character of that ownership * * * The particular ownership of the property stolen does not fall within the definition, and is not of the essence of the crime. Neither the legal nor moral quality of the act is affected by the fact that the property stolen, instead of being owned by one, or by two or more jointly, is the several property of different owners. *The gist of the offense is the felonious taking* * * * The grade of the offense is determined by the value of the property taken. The time and place of the taking and the ownership of the thing taken must be alleged in the information, not to give character to the act of taking or appropriation, but merely by way of description. The fraud is against the owner; but *the crime* * * * *is against the state* * * * The prosecution is conducted in the name and by the authority of the state. The owner of the property stolen is not a party thereto." Emphasis supplied.

MR. JUSTICE BOTTOMLY asks this question, "Did the person intend to permanently deprive the true owner of his property?" A reading of the record answers the question in the same way that the jury answered it. The answer obviously is "Yes."

The prosecution, the defense and all parties treated the Comptometer Corporation of Spokane and Steve Fowler as the

*true owner* of the Comptometer machine and the proceeds of its sale.

The whole transaction is one of common practice in sales of this character, automobiles, television sets, washing machines, and the like. To treat this as a civil trespass and to require proof of the arrangement between the Comptometer Corporation of Spokane and the Comptometer Corporation of Algonquin, Illinois, is wholly irrelevant to the inquiry. Suffice it to say no one ever raised the question of ownership or ever contended that the Comptometer Corporation of Algonquin, Illinois, owned the machine or the proceeds of the sale.

State v. Wallin, 60 Mont. 332, 340, 199 Pac. 285, cited in the dissenting opinion is not in point on any conceivable state of facts in the instant case.

MR. JUSTICE BOTTOMLY, dissenting:

I dissent.

In my opinion the information filed in this case and which was the basis for this prosecution does not allege the facts essential to conform with the requisite statute, R.C.M. 1947, sec. 94-2701, in that, according to the testimony of the state's witnesses, neither Steve Fowler nor the Comptometer Company of Spokane, Washington, were the true owner or owners of the money in question as stated and alleged in the information. The state's evidence show that the true owner was the Comptometer Corporation of Algonquin, Illinois, and not Steve Fowler nor the Comptometer Company of Spokane, Washington. See State v. Wallin, 60 Mont. 332, 340, 199 Pac. 285.

To constitute the crime of larceny, the intent which accompanies the act of taking must be the criminal intent to deprive the *true owner* of his property, not temporarily but permanently. The test of law to be applied to these circumstances for the purpose of determining the ultimate facts as to the guilt or innocence of the accused is: Did the person intend to permanently deprive the *true owner* of his property? If he did not

intend to do so there is no felonious intent, and his act constitutes but a civil trespass.

I would reverse the judgment and remand the cause with directions to dismiss the information and discharge the defendant.

MR. JUSTICE ADAIR:

I concur in MR. JUSTICE BOTTOMLY'S foregoing dissenting opinion.