The STATE OF MONTANA, Plaintiff and Respondent, *v.*
JOHN O. RINDAL, Defendant and Appellant.

No. 10889
Submitted May 17, 1965. Decided July 19, 1965.
Rehearing Denied August 16, 1965.
404 P.2d 327

Sandall, Moses & Cavan, Billings, DeKalb, Mondale & Johnson, Lewistown, Charles F. Moses (orally), Valerie W. Scott, Billings, and Walter E. Mondale, Lewistown, appeared for appellant.

Forrest H. Anderson, Atty. Gen., William G. Sternhagen, Asst. Atty Gen. (orally), Helena, Peter L. Rapkoch, County

Atty., and Leonard H. McKinney, Deputy County Atty. (orally), Lewistown, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment pronounced on the defendant after his conviction of the crime of grand larceny.

The defendant, John O. Rindal, was charged with the wilful taking of an air compressor and a welder. He was convicted and sentenced to five years in the state prison. All but the first 45 days of the sentence was suspended. The alleged crime occurred in the early morning hours of August 5, 1962, near Roy, Montana. The defendant and an acquaintance, Donald Brekke, had been engaged in drinking and playing cards in the Roy bar from early the previous afternoon until about 2:00 o'clock in the morning. They then drove to a nearby missile site where they saw the air compressor and welder. The defendant testified that they had driven there with the intention of taking something from the site as a trick on a certain Fuller-Webb Company. Brekke testified that the defendant knew the air compressor and welder were there and expressed a desire to have them for his own use. In any event, the two men returned to Roy where they procured two trucks from relatives of the defendant and then went back to the missile site and hauled away the two items. Brekke took the air compressor with one truck, the defendant took the welder with the other. They concealed both pieces of equipment in a coulee on the property of one, Robert Fink. A bulldozer standing close by, owned by the defendant, was used to cover the items with trees and dirt. Testimony conflicts as to which one of the men operated the bulldozer.

Brekke testified that the defendant suggested a few days later that they sell the equipment, saying that he had a buyer. The defendant denied this and testified that it was Brekke who suggested the sale, whereupon he, the defendant, declared that he wanted nothing more to do with the affair. Later Brekke

did in fact sell the equipment to A. E. Kralling. Brekke, Fink, and another, George Komarek, removed the items from the coulee. The welder was hidden elsewhere on Fink's property. The air compressor was hidden under Komarek's haystack. Later the air compressor came into the possession of Kralling where it was discovered by the sheriff of Fergus County about one year after it had disappeared from the missile site. Thereafter, Fink turned the welder over to the sheriff. Brekke had received payment for the items from Kralling, no part of which ever reached the defendant.

The air compressor and welder were owned by Base Rental and Equipment Company of Great Falls. At the time of the taking they were under lease to the American Bridge Company.

Defendants' first specification of error is that the State lacked jurisdiction to try the case, the crime having taken place on property over which exclusive jurisdiction was ceded by the State to the Federal Government.

Article I, § 8, cl. 17 of the Federal Constitution provides the Congress shall have Power "To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings * * *."

The Supreme Court of the United States has held that the consent of the state legislature to a purchase of land under this provision can be qualified by reserving to the state concurrent jurisdiction with the Federal Government. James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318. In Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, the Supreme Court enunciated this principle in terms of criminal jurisdiction. In that case the defendant

68

was convicted of murder in Federal District Court. The crime occurred in Chattanooga National Military Park, a plot of land under the administration of the War Department. It was held that the Federal Court had jurisdiction since Georgia State statute authorizing the sale of that land to the Federal Government reserved only the right to serve process in the purchased territory. The court noted however that prior to amendment the State statute had contained this language: "* * * *provided*, that this cession is upon the express condition that the State of Georgia shall so far retain a concurrent jurisdiction with the United States over said lands and roads as that all civil and criminal process issued under the authority of this State may be executed thereon in like manner as if this Act had not been passed; and upon the further express conditions, that the State shall retain its civil and criminal jurisdiction over persons and citizens in said ceded territory as over other persons and citizens in the State * * *." The court also stated:

"If the matter rested with these statutes, there would be no room for doubt that jurisdiction to punish for crimes committed on the lands within the Park remained with the State."

Thus, it is clear that the States face no constitutional bar to reserving criminal jurisdiction over territory conveyed to the Federal Government under Article I, § 8, Clause 17. The question then is, has Montana reserved such jurisdiction?

This State has recognized its power to qualify its cession of Federal jurisdiction in R.C.M.1947, § 83-102. This statute provides:

"The sovereignty and jurisdiction of this state extend to all places within its boundaries, as established by the constitution, excepting such places as are under the exclusive jurisdiction of the United States; but the extent of such jurisdiction over places that have been or may be ceded to, purchased, or condemned by the United States, is qualified by the terms of such cession, or the laws under which such purchase or condemnation has been or may be made."

The general cession statute, applicable to this case, is R.C.M. 1947, § 83-108, which reads in part:

"Pursuant to article 1, section 8, paragraph 17, of the constitution of the United States, consent to purchase is hereby given and exclusive jurisdiction ceded, to the United States over and with respect to any lands within the limits of this state, which shall be acquired by the complete purchase by the United States, for any of the purposes described in said paragraph of the constitution of the United States, said jurisdiction to continue as long as said lands are held and occupied by the United States for said purposes; reserving, however, to this state the right to serve and execute civil or criminal process lawfully issued by the courts of the state, within the limits of the territory over which jurisdiction is ceded in any suits or transactions for or on account of any rights obtained, obligations incurred, or crimes committed in this state, within or without such territory * * *."

■ The statute is clear and unambiguous. The critical language is "crimes committed * * * within or without such territory * * *." Clearly, Montana did retain criminal jurisdiction over land purchased by the Federal Government. This conclusion is further substantiated by contrasting two other ceding statutes in the Montana Code with section 83-108, and by examining the legislative history of such section.

The statutes to be compared are those ceding jurisdiction to the United States over land included in Glacier National Park (R.C.M.1947, § 83-104) and that part of Yellowstone National Park situated in Montana (R.C.M.1947, § 83-106). Each of these statutes reserve to the state the right to serve criminal process within the Park in any prosecution for crimes committed in the State, "but outside" of such Park. No reservations to serve process for crimes committed inside the Parks are made. Clearly the intention expressed in these statutes was to vest in the Federal Government exclusive jurisdiction over crimes committed within the territory transferred. In sec-

tion 83-108, where the legislature uses the language "within or without," the only conclusion can be that the intent was contrary—to reserve criminal jurisdiction to the state.

The legislative history of Montana's general cession statute reveals that as enacted in Section 1, p. 52 of the Laws of 1893, it reserved "a concurrent jurisdiction for the execution upon said lands of all process, civil, or criminal, lawfully issued by the courts of the State." It contained no statement concerning jurisdiction over crimes committed within the purchased territories. This court held in State v. Tully, 31 Mont. 365, 78 P. 760, decided in 1904, that such jurisdiction was not reserved. In 1939 the general cession statute was amended (Section 1, Chapter 155, Laws of 1939) to its present form i. e., that of R.C.M.1947, § 83-108. The fact that the legislature altered the statute to contain the language "crimes committed * * * within or without such territory" would make it appear that the purpose of the amendment was to change the law to include jurisdiction over offenses committed in said territory or to remove any doubt that such jurisdiction existed.

The fact that section 83-108 expresses a reservation only to serve and execute process cannot be taken as excluding the right to prosecute. Obviously, a state would not reserve the right to serve process for a crime committed in a certain area without retaining jurisdiction to try that crime.

To sustain this specification of error the appellant has the additional burden of showing that the Federal Government "accepted" jurisdiction. We do not feel compelled to examine into this question, having already found criminal jurisdiction to have been reserved by the state.

Defendant's second specification of error is that he was entitled to an instruction to the jury that they could not convict him of committing a crime in one way when the information alleged it to have been committed in another. The defendant maintains that he was charged with committing larceny under R.C.M.1947, § 94-2701, subd. 1, by "taking" property and that

the State proceeded to introduce evidence to prove that he committed larceny by "secreting" property, provided for in the same code section.

The rule that a party may not be convicted of one offense upon an information which charges a distinct and unrelated crime is a sound one. State v. Lund, 93 Mont. 169, 18 P.2d 603. However, that is not the case here.

In this case, the taking, carrying away, and hiding were one continuous act constituting the crime alleged. It was only natural and necessary that all of these events should become part of the evidence at trial. The act of hiding tended to prove not only a secreting, but criminal intent in the taking as well. This becomes especially important in this case since the defendant's principal defense is that he had no criminal intent, but rather was playing a trick. Conviction on a charge made by means of evidence which would also support conviction on a charge not made cannot be deemed to prejudice the accused. United States v. Schneiderman, D.C., 106 F.Supp. 906. (And see State v. Simpson, 109 Mont. 198, 95 P.2d 761.)

The general rule that allegations and proof must correspond is based on requirements that the defendant not be misled at trial and that he be protected against another prosecution for the same crime. United States v. Schneiderman, supra. There is nothing to suggest that there was a danger of either in this case. Defendant's wrong was that of criminally depriving the owner of his property. He knew or should have known what matters would be involved in the proof of this crime. The defendant himself testified as to the caption, asportation, and concealment of the property. As to any of this he could not have been surprised or misled. This being so, no prejudice resulted from the refusal of the lower court to give the instruction asked for.

The third specification of error arises out of an instruction given to the jury that they should find the defendant guilty as a principal in the crime if they determined that he aided and

abetted in the commission thereof. It is argued that this entitled the defendant to an instruction defining the terms "aiding" and "abetting".

The rationale for giving such an instruction is that the layman will take these terms to mean simply assisting in the criminal acts, while the fact is that "abetting" requires guilty knowledge. People v. Etie, 119 Cal.App.2d 23, 258 P.2d 1069. We feel the issue is not squarely before the court in this case. It is our opinion after reading all of the instructions given that the jury could not reasonably have concluded that the defendant could be found guilty without having criminal intent. At least eight separate instructions refer to this element. Of particular significance is the court's instruction No. 26, which reads: "An accomplice is one who knowingly and voluntarily, *with common intent with the principal offender*, unites in the commission of a crime. One may become an accomplice by being present and joining in the criminal act, by aiding and abetting, *with criminal intent,* another in its commission, or in being present by advising and encouraging its commission, but *knowledge and voluntary action are essential in order to impute guilt."* (Emphasis added.) In view of this, a definition of "aiding" and "abetting" was unnecessary.

Finally, appellant alleges as error the fact that Base Rental and equipment Company was named in the Information as owner of the stolen property and that American Bridge Company was proved to have had custody and control of the property at the time of the theft. He relies on a line of Texas cases setting forth the proposition that if possession of the property is alleged to be in the owner it is a fatal variance if the property is proved to have been stolen from the possession of some other person. Ratcliff v. State, 88 Tex.Cr.R. 79, 225 S.W. 53; Winn v. State, 138 Tex.Cr.R. 202, 135 S.W.2d 118; O'Mary v. State, 152 Tex.Cr.R. 319, 213 S.W.2d 683.

This court must refuse to give that rule strict application. In the absence of a showing of prejudice to the de-

fendant no new trial should be ordered. This point is controlled by R.C.M.1947, § 94-6409, which provides: "When an offense involves the commission of, or attempts to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material." Even without the statute the result would be the same. This court has taken the position that an information charging grand larceny is sufficient so long as it enables the defendant to prepare a defense. See State v. Fairburn, 135 Mont. 449, 340 P.2d 157.

We cannot see how naming the American Bridge Company in the information rather than Base Rental would have enabled the defendant to come to trial better prepared. It appears that the offense was described in the Information with sufficient certainty to identify the act. The defendant has not contended otherwise.

What this court said in State v. Mjelde, 29 Mont. 490, 75 P. 87, 88, and reiterated more recently in State v. Fairburn, supra, at 135 Mont. 455, 340 P.2d 161, applies equally here: " 'The particular ownership * * * is not of the essence of the crime. * * * The gist of the offense is the felonious taking * * *. The time and place of the taking and the ownership of the thing taken must be alleged in the information, not to give character to the act of taking * * * but merely by way of description. The fraud is against the owner; but the crime * * * is against the state * * *.' "

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, ADAIR and CASTLES, concur.